BENTON GRAVEL COMPANY *v.* WRIGHT.

4-7158                                                   175 S. W. 2d 208

Opinion delivered November 22, 1943.

*Ernest Briner,* for appellant.

*Kenneth C. Coffelt,* for appellee.

McFADDIN, J.   This appeal involves injuries to real estate caused by blasting. Appellee filed this action for damages against appellant, alleging; that she was the owner of a house and lot in Benton, Arkansas; and that appellant, in removing gravel from its nearby land, used dynamite in blasting and "negligently caused the well of the plaintiff on her property to go dry and muddy and ruin the water therein for her own use, . . . and, because of said blasting, plaintiff's house, located on said property, which is her home that she resides in, has been shaken and moved about on its foundations," to appellee's damage in the sum of $500. Appellant (defendant) filed a general denial, and specifically denied any acts of negligence. A jury trial resulted in a verdict for appellee for the full amount prayed; and from an order overruling motion for new

trial comes this appeal, raising the questions hereinafter discussed.

I. *Ownership*. Appellant claims that appellee failed to prove her ownership of the house and lot alleged to have been damaged; but we hold the evidence on that issue is sufficient to support the jury's verdict. Appellee testified that she purchased the property in 1931 and received a deed which was lost and not recorded, but she had been in possession, either through her tenant or personally, since 1931. Her testimony in this regard was supported by other witnesses, and was sufficient evidence of ownership, in a case like this, either under a lost deed or by adverse possession. *Calloway* v. *Cossart,* 45 Ark. 81.

II. *Negligence*. Appellant specifically denied any negligence. The proof showed that appellant owned gravel land adjacent to that of appellee, and that in removing the gravel, appellant blasted holes and pits sometimes as much as twenty-five feet deep; but appellant claimed that it had a right to use its property as it saw fit so long as it was not guilty of negligence; and appellant urges that in the absence of proof of negligence the appellee cannot recover, since the damages pleaded in this case were from concussion and vibration and not from falling stones and debris. There is a conflict of authority on this question. One line of cases holds that even *in the absence of negligence*, one engaged in blasting is liable for damages caused only by vibration and concussion. Another line of cases holds exactly to the contrary. These two lines of authority are discussed in 22 Am. Jur. 180 and 35 C. J. S. "Explosives" § 8, p. 238. In the annotation in 92 A. L. R. 741, our own case of *Holden* v. *Carmean,* 178 Ark. 375, 10 S. W. 2d 865, is listed as adhering to the first-mentioned line of authority. Our case does not go as far as the annotation states. We have never adhered to either line of authorities. In *McGeorge* v. *Henry,* 193 Ark. 443, 101 S. W. 2d 440, in discussing the same question, we said: "There is ample authority to the effect that under such circumstances the landowner may recover damages without proof of

negligence, even though negligence is laid in the complaint. *Patrick* v. *Smith,* 75 Wash. 407, 134 Pac. 1076, 48 L. R. A., N. S., 740; *Exner* v. *Sherman Power Construction Co.,* (C. C. A. 2d Circuit), 54 Fed. 2d 510, 80 A. L. R. 686. We do not now adopt such rule, as it appears to us that the evidence is sufficient to go to the jury on the question of negligence.''

We adopt the quoted language here because the same situation exists in the case at bar, in that the evidence here is sufficient to go to the jury on the question of negligence. The evidence offered by the appellee showed that the explosions were so great as to shake houses on their foundations, that rocks and gravel were thrown 150 feet from the blasting, that other wells in the neighborhood were damaged, and that (in the words of one witness) ''if the shocks are strong enough it will change a vein of water if it tears up the ground around it.'' Under these facts, there were sufficient resultants to warrant the conclusion that an excessive amount of explosive was used in some part of the operation. The use of excessive explosives is negligence. ''To blast to a greater extent or to use explosives in larger quantities than is reasonably necessary, or to fail to take proper care with regard to the place and surroundings, constitute actionable negligence when it results in injury to the adjoining property.'' 22 Am. Jur. 176. Our own case of *McGeorge* v. *Henry, supra,* is also authority on this point.

III. *Excessive Verdict.* Appellant claims that the verdict is grossly excessive, but the discussion of the next topic will dispose of this contention.

IV. *Measure of Damages.* Appellee (plaintiff) tried the case on the theory that the injuries to the land were permanent. If such were true, then of course the rule would apply that where the injury to real property is permanent, the measure of damages is the difference in market value before and after the injury. *Standard Oil Co.* v. *Goodwin,* 174 Ark. 603, 299 S. W. 2, 15 Am. Jur. 517; 25 C. J. S. ''Damages,'' § 4, p. 603; West's Arkansas Digest, ''Damages,'' § 110. But the record fails to afford

enough evidence on this basis of permanent injuries to support the verdict of $500, or any other definite amount. One witness testified that the property, immediately before the injuries, was worth $800, but neither this witness nor any other gave an estimate of the value of the property after the injuries. So there is no evidence to support the amount of the jury's verdict on the theory of permanent injuries.

On the other hand, appellant tried the case on the theory that the injuries to the land were temporary. Several witnesses testified that appellee's well could be restored by digging it six feet deeper. One carpenter testified that the only damage to the house was the need of ordinary repairs. But appellant failed to secure from the witnesses any estimate of the cost of restoring the well and repairing the house. So, the record is deficient as to the amount of the temporary injuries. Of course, if the injuries were temporary, then the rule would be that where the injury to real property is temporary, the measure of damages, in a case like this one, is the cost of restoration to condition prior to the injury plus decreased rental value from the time of injury to the time of award for restoration. *Railway Co.* v. *Jones,* 59 Ark. 105, 26 S. W. 595; 15 Am. Jur. 519; 25 C. J. S. "Damages," § 84 p. 605; West's Arkansas Digest, "Damages," § 109.

The only injuries pleaded and claimed were: (1) the well going dry, etc., and (2) the house being shaken on its foundations. These injuries could have been either temporary or permanent; it was for the jury to decide. In 25 C. J. S. "Damages," § 72, p. 562, it is stated: "Where there is more than one method of estimating damages, that method which is more definite and certain should be adopted; and if either of two measures will fully compensate the injured party for his loss, that measure which is least expensive to the wrongdoer must be adopted." Sutherland on Damages, 4th Edition, §§ 1017 and 1018, speaks of injuries to lands as "permanent" and "remediable"; and it is in the sense of "remediable" that we use the word "temporary" in this case. Suther-

land lists many instances where injuries to buildings and fences were held to be temporary, and damages measured by the cost of restoration; and also lists cases holding that one injured by diversion of water may recover the expense incurred in obtaining other water.

In the case of *Seely* v. *Alden,* 61 Pa. St. 302, 100 Am. Dec. 642, in discussing the determination of the measure of damages to be used, the court said: "It is often difficult for a court to determine the true measure until all the evidence is in. It may turn out that the cost of removing the deposit in a certain case would be less than the difference in the value of the land, and then the cost of removal would be the proper measure of the damages; or it may be that the cost of removal would be much greater than the injury by the deposit, when the true measure would be the difference in value merely. If there be different modes of measuring the damages, depending on the circumstances, the proper way is to hear the evidence, and to instruct the jury afterwards according to the nature of the case."

In the case of *McGeorge* v. *Henry,* 193 Ark. 443, 101 S. W. 2d 440, the injuries claimed were, as here, damages to or loss of a well; and, there, the court charged the jury on the measure of damages (1) if the injuries were temporary, or (2) if the injuries were permanent; and left it to the jury to decide which measure to apply. That is the correct procedure in a case like the one here, where reasonable men may honestly differ as to whether the injuries are temporary or permanent. In the case at bar the trial court—over appellant's objections duly preserved of record and brought forward here—instructed the jury on the measure of damages applicable only in permanent injury cases. This was plaintiff's instruction No. 3; and we hold that this instruction was erroneous in that it assumed the injuries to be permanent. 15 Am. Jur. 820. The question of whether the injuries were temporary or permanent should have been submitted to the jury just as was done in the case of *McGeorge* v. *Henry, supra.*

For error in giving plaintiff's instruction No. 3 and failing to submit to the jury the question of whether the injuries to the real estate were temporary or permanent, the judgment of the lower court is reversed and the cause is remanded for a new trial.