PHILLIPS *v.* GRAVES.

4-9651                                                       245 S. W. 2d 394

Opinion delivered January 14, 1952.

Rehearing denied February 18, 1952.

*Martin K. Fulk* and *John H. Wright,* for appellant.

*G. W. Lookadoo, J. H. Lookadoo, O. A. Graves, Travis Mathis* and *McMillan & McMillan,* for appellee.

Holt, J.   This suit was originally brought by Ed Graves, appellee, against David Terrell, Jr. and appellant, George E. Phillips, for balance of $756.31 due on the purchase price of furniture which was destroyed by fire in Terrell's home.   The Northwestern Mutual Fire Association and its agent, James Shaw, were joined as defendants on the allegation by Graves that the furniture on which Graves had retained a lien was covered by a policy of insurance issued by the insurance company through its agent, Shaw, and that both the company, and Shaw personally, were liable.

Terrell answered alleging that he was entitled to any protection that the insurance offered and that Graves had so agreed, and in a cross-complaint against Phillips, Terrell alleged that Billy Mormon, an employee of Phillips, while installing a gas stove in his (Terrell's) residence negligently caused a fire which destroyed his furniture and in addition, clothing and other personal property belonging to him and his wife, in the amount of $1,222.31, and that his equity in the furniture amounted to $100, his down payment to Graves.   He prayed for total damages in the amount of $1,322.31.   Both Terrell and Graves alleged that the fire in question was caused through the negligence of Mormon, appellant's employee.

Appellant denied any liability.   A trial resulted in a decree containing these recitals: "The Court finds that the house belonging to David Terrell, Jr. and the furniture (which David Terrell, Jr. had purchased from the plaintiff, Ed Graves) and the other personal property in the house of a value of $1,222.31 was destroyed by fire, which fire was due to the negligence on the part of the agents and servants of George Phillips in the manner in which they installed a heater in the house and that as a result of said negligence the defendant George Phillips is liable to the defendant David Terrell, Jr. in the sum of $100, being the equity which David Terrell Jr. had in the furniture purchased from plaintiff Ed Graves, and is liable to David Terrell, Jr. an additional sum of $1,222.31 for other property belonging to David Terrell, Jr. which was destroyed by said fire; and is liable to

the plaintiff Ed Graves in the sum of $756.31 being the amount of interest of Ed Graves in said furniture destroyed. 5. The Court further finds that the defendant James Shaw is entitled to be subrogated to the rights of the plaintiff Ed Graves and the defendant David Terrell, Jr. against George Phillips to the extent of $756.31 and costs for which Shaw is liable to Graves and Terrell."

The cause against the insurance company was dismissed with prejudice and a decree was entered accordingly.

Appellant, Phillips, alone has appealed.

For reversal, appellant contends that the court's finding that Mormon, an employee of appellant, was acting within the scope of his employment while installing the stove in Terrell's home was against the preponderance of the evidence, that there was not sufficient proof of Mormon's negligence, and "that the decree is excessive and not supported by proper evidence as to value of the personal property described."

The evidence discloses that Billy Mormon and Winston Harrison were employees in a store of appellant in Arkadelphia, that appellee, Terrell, purchased the gas stove in question from Harrison for $7.20 and that Billy Mormon attempted to install it in Terrell's home and while in the act of installing, gas escaped, ignited, and a fire resulted, destroying the house, furniture, clothing and personal property above mentioned. Appellant's store in Arkadelphia was in charge of Harrison. Various kinds of household equipment, such as stoves, refrigerators, etc., were sold. Appellant also owned a store in Hot Springs where he spent most of his time. D. L. Ervey did all installations at appellant's Hot Springs store and some in Arkadelphia.

Terrell testified that it was agreed that the stove was to be installed. Harrison denied this.

Mormon testified: "Q. Are you sure that you had not installed heaters at private homes sold from Phillips' store? A. Not any that I sold. Q. You installed heaters

sold out of store previous to this occasion here? A. Yes. * * * How come you to go out there and install heater. A. There was really no one that sent me out. Cap came and asked me if I would do it. Q. Who is Cap? A. David Terrell. * * * Q. What happened when you went out to install heater, what was the procedure? A. I went out, and almost any plumber will tell you, and was going to put the heater in, the cap on the pipe was loose enough to unscrew with your finger. When I took cap off, pipe fell under the floor. Q. Did you go around and see if all fires were off? A. No, I did not. Q. You did not check water heater? A. No. Q. The pipe, you say, fell below the surface of the floor? A. Your brother was with me at the time and I got him to stop gas on pipe to see if I could get under the house and push pipe up. Q. Was a cap there over pipe? A. Yes. Q. You came back in and took cap off? A. Yes. Q. And the house burned down? A. Yes. * * * Q. Mr. Harrison did not send you out to install this stove? A. No. Q. Was it your duty to install stoves? A. Mr. Phillips has never mentioned it to me about going and installing stoves. Q. You heard Mr. Terrell say you agreed to install this stove? A. That was between Mr. Terrell and me. Q. How did he get you to do it? A. He asked me to put up stove, that he was working. Q. Did you do it just on account of your personal acquaintance? A. Yes. He said he did not have time, was working and did not have time. Q. Who were you considering you were helping out? A. Thought I was doing favor to Cap Terrell. * * * Q. What was said about the transportation out there? A. Mr. Harrison came to me and said we had no way to go out there and said he could not install the stove. Q. But Mr. Terrell came up about that time and said he would get you some transportation? A. Yes. Q. What about the connection? A. To best of my knowledge, it came from Clark County Supply Company. Q. Who went and got it? A. Mr. Terrell. * * * Q. All conversation with Mr. Harrison was that you could not install it? A. Yes. Q. When you went out to Terrell's house did Harrison know you were going out there? A. Yes. Q. Did you take tools with you? A. Yes—they were tools we had

there in the store. * * * Q. And you had a truck for that purpose to carry stoves and install out to premises? A. Yes. * * * Q. You had installed at least one stove before that and you got your equipment at this time at the store? A. Yes. Q. And the store manager knew what you were going to do? A. I told him I was going. Q. And got equipment from the store? A. Yes. * * * Q. But you did install stoves that you sold? A. Yes. Q. And you used store's tools? A. Yes. Q. And you would have used store's car if it had been there? A. I could not say what the situation would have been. Q. You had it available to deliver stoves? A. Yes. Q. But at this particular moment it was gone from place of business? A. I really think it was at Hot Springs. * * * Q. You had the same authority to go do what was necessary to carry out a sale, if it was installing stoves, refrigerators, hooking it up, you had just as much authority as Mr. Harrison? A. I did not have to have authority from anyone if it is part of transaction in carrying out work. Q. You were supposed to do that? A. Maybe I went out against orders, I don't know, I did not get orders to go. Q. Mr. Harrison did not object to your going out? A. No. Q. And he knew you were going? A. Yes. Q. And you two only ones in store? A. Yes. Q. The sale was already completed and over with when Mr. Terrell came and talked to you about going out? A. Yes."

Winston Harrison testified: "Q. It is customary that you install stoves that you sell? A. We will install all we can, if we have something else to do we cannot take off. * * * Q. Bill was in the employ of Phillips, whose duty it was to install stoves that you sold? A. Yes. Q. That is service you offered your customers? A. If we sold a cheap stove we could not bring a man from Hot Springs to do it. Q. You had a man to make installations for you? A. Yes. Q. At your expense. A. Yes. Q. Ervey and truck were not there? A. That is right. Q. And apparently Mr. Terrell was in a hurry to get stove installed? A. Yes. Q. If Mr. Terrell had been willing to wait until Ervey had come over to Arkadelphia to do it in his regular routine, you would have installed the stove for Mr. Terrell? A. Mr. Ervey would. Q. The

reason it was handled this way was that Terrell was in a hurry? A. Yes. Q. You did not have a truck? A. No. Q. Terrell provided transportation and got Mormon to go out? A. Yes. Q. You do install stoves. A. Yes. Q. You have installed stoves at Arkadelphia? A. Yes."

In short, the evidence tends to show that Terrell bought the stove in question from Harrison for $7.20 and that as part of the consideration, Mormon, appellant's employee, was to install it rather than call Ervey from Hot Springs with appellant's truck to make the installation in this small sale, and that installation was a part of the general services to customers. Mormon drew his full week's pay of $27 and installed the stove in Terrell's home at about 10:15 A. M., during working hours.

In these circumstances, our rule is well established that the principal, Phillips here, would be bound by the acts of his agent or employee, Mormon, which were within the real or apparent scope of Mormon's authority, whether they had been authorized or not. We said in *A. J. Chestnut Company* v. *Hargrave,* 177 Ark. 683, 7 S. W. 2d 800, "the principal is bound by the acts of his agent which are within the real or apparent scope of his authority. (Citing many cases)," and in *Oil City Iron Works* v. *Bradley,* 171 Ark. 45, 283 S. W. 362, we said: "The general rule is that a principal is bound by all acts of a general agent which are within the apparent scope of his authority, whether they have been authorized or not. *Security Life Ins. Co.* v. *Bates,* 144 Ark. 345, 222 S. W. 740; *Battle* v. *Draper,* 149 Ark. 55, 231 S. W. 869, and *Bartlett* v. *Yochum,* 155 Ark. 626, 245 S. W. 27."

While appellant, as indicated, stoutly contended that Mormon was acting entirely without authority and had stepped aside on a mission of his own to render a personal favor to Terrell in installing the stove, after a careful review of all of the evidence, we are unable to say that the Chancellor's findings against appellant's contentions were against the preponderance of the testimony.

As to the excessiveness of the amount of the recovery. We cannot agree that it was excessive in the light of the testimony. An itemized list (other than the furniture) was introduced by Mr. and Mrs. Terrell, who testified that they knew the present fair value of their property from its cost. Appellant offered no testimony to show that the values placed upon the various pieces of property were not the fair values thereof.

The text writer in 32 C. J. S., page 315, section 545 (3) says: "It is generally held that one is competent to testify to the value of personal property which he owns. The mere fact of ownership of personal property is usually regarded as sufficient to qualify one to state his estimate of its value, at least in the case of common classes of personal property or commodities in general daily use. The chattels or kinds of personal property whose value the owner has been held qualified to testify to include * * * clothing, * * * household furniture, * * * personal belongings, * * *. The competency of the owner is not affected by the fact that his knowledge is recently acquired, and is based in part on the result of inquiries made of experts and others," and in a note (9) on page 314: "Chattels in common use. Rules of evidence are not so technical as to require expert witnesses to prove the reasonable or market value of chattels such as household furniture in common use, where it is apparent that the value of the articles is within the knowledge of persons of ordinary intelligence and experience."

In our own case of *Kimball* v. *Goldman*, 117 Ark. 446, 174 S. W. 1185, this court said: "The ruling of the court on the measure of damages was correct. The doctrine on this subject is accurately stated in 6 Cyc. 677, as follows: 'The value of personal baggage is to be determined by what it is worth to its owner and not what it would bring on the market.' "

Finding no error, the decree is affirmed.