430 F.Supp. 1290 (1977)
Roy L. TARTER, Plaintiff,
v.
MonARK BOAT COMPANY, Defendant and Third-Party Plaintiff,
v.
SteelSHIP CORPORATION and AlumaShip Corporation, Third-Party Defendants.
No. 74-765C(4).
United States District Court, E. D. Missouri, E. D.
May 5, 1977.
*1291 Charles D. Dalton, Klamen, Summers & Compton, Clayton, Mo., for plaintiff.
Francis L. Kenney, Jr., Kenney, Leritz & Reinert, St. Louis, Mo., for defendant and third-party plaintiff.

MEMORANDUM
NANGLE, District Judge.
Plaintiff Roy L. Tarter brought this suit seeking to recover damages allegedly sustained for breach of warranties in connection with a custom-built houseboat. Defendant MonArk Boat Company filed a third-party complaint. One of the three third-party defendants was dismissed from this suit. The remaining two third-party defendants filed petitions in bankruptcy and accordingly, suit did not proceed with respect to the third-party complaint. Defendant MonArk counterclaimed, seeking to recover additional payments under the contract.
Following trial to the Court sitting without a jury, the Court makes the following findings of fact and conclusions of law as required by Rule 52, Federal Rules of Civil Procedure:

FINDINGS OF FACT
1) Plaintiff Roy L. Tarter is a citizen of the state of Missouri. Defendant MonArk Boat Company is an Arkansas corporation with its principal place of business in Monticello, Arkansas.
2) On August 4, 1972, plaintiff and defendant executed a customer sales order for the construction of a fifty-eight foot custom-built houseboat.
3) On August 12, 1972, plaintiff and defendant executed a contract in connection with the same. The contract incorporated the customer sales order and incorporated by reference certain drawings, parts lists and exhibits describing in detail the items to be included in the construction of the boat.
4) The contract stated, in part,
II. WARRANTY

MonArk Boat Company guarantees their workmanship and material for six months after the date of delivery of the vessel to the owner. All of the equipment and main propulsion machinery are warranted to be new and from reputable marine manufacturers, and said equipment carries its manufacturers standard warranty. MonArk's warranty covers labor and material, with service performed within one hundred miles of a MonArk factory facility. If it is deemed necessary by the customer to perform field service work beyond one hundred miles then the customer shall be liable for travel and extra expenses incurred.
The above policy is MonArk's entire warranty and no other warranty is intended or implied other than the above stated policy.
The contract further specified that it was to be construed in accordance with the laws of Arkansas.
5) On July 13, 1973, by a stock purchase agreement, MonArk sold to Star Enterprises, Limited the stock of MonArk Shipyards, Inc. and the name was changed to SteelShip, Inc. As part of this sale, Star Enterprises, Limited, acquired the stock of MonArk *1292 Custom Craft, Inc. which was renamed AlumaShip, Inc.
6) Pursuant to this sale, the contract with plaintiff was assigned to AlumaShip who "shall be deemed to have assumed all responsibility thereunder . . .".
7) Terrel Spencer, who worked on plaintiff's boat while construction was being done on it by defendant MonArk, told plaintiff in July, 1973 that he had been taken off the job and could not do any more work "unless they pay me for it down there". Apparently, plaintiff understood that "they" referred to AlumaShip. This was the only information plaintiff received about the assignment. Plaintiff then wrote letters to various persons at MonArk complaining about the situation. One person at MonArk telephoned plaintiff and told him that he would be better off with AlumaShip. This individual promised to write plaintiff a letter about the situation but never did.
8) Plaintiff visited the AlumaShip facility. The sign at the entrance to the facility remained "MonArk", and not "AlumaShip" until after the end of 1973.
9) Plaintiff did not consent to the assignment of this contract and the evidence fails to establish that plaintiff received any details of the assignment.
10) In October, 1973, plaintiff wrote to MonArk stating that "[i]t is unfortunate and a shame that you abandon my Contract with you to someone that up to this date has never telephoned or wrote me regarding any phase of the construction of my houseboat".
11) Under the contract, the purchase price of $160,000.00 was to be paid as follows: 20% on the signing of the contract; 20% upon completion of the hull, installation of the cabin and setting of the machinery; 10% upon completion of the vessel and 10% upon delivery.
12) Between August 10, 1972 and July 9, 1973, plaintiff made four payments of $32,000.00 each to defendant MonArk. Thus, plaintiff paid defendant MonArk a total of $128,000.00. The evidence did not establish the phase of construction at the time of payment.
13) Final payment was made to AlumaShip by means of an escrow account. In December, 1973, plaintiff received a guarantee stating that Star Enterprises, Limited, having assumed the responsibility of MonArk under the Contract, agreed to indemnify plaintiff against any claim by MonArk for payment of the remaining purchase price. Plaintiff also received a Lien and Claim Affidavit from AlumaShip Corporation and Ed Fry, individually, agreeing to indemnify plaintiff for any and all claims, liens, charges and demands by laborers and furnishers of material and equipment.
14) In late December, 1973, plaintiff went to the AlumaShip facility to pick up the boat. The boat was immediately taken to Morgan City, Louisiana for repairs of a bent propeller. In transit a fire broke out.
15) The boat as delivered was deficient in numerous respects. There have been several electrical fires on board and the testimony adduced at trial was to the effect that the entire electrical system was deficient. Among the problems were that incorrect wiring was used; some wiring was left open; inappropriate splicing was done; wiring was run through the air conditioning duct in violation of the National Electrical Code; there was no protection between the insulation and metal on the boat; and grounding was insufficient. The evidence also established that the windows and sliding glass doors throughout the main deck and upper deck leaked causing damage to the draperies, carpeting and wallpaper. Defendant MonArk attempted to correct the same by caulking around the windows. This was required because the windows were not installed properly. The caulking has affected the aesthetic quality of the boat and has made correction of future leaking problems difficult if not impossible. The air conditioning system was improperly installed as the vent work was constructed of wood rather than metal. There were difficulties with the steering mechanism. The below-deck compartments lacked *1293 watertight integrity. Insulation was inadequate.
16) Plaintiff notified AlumaShip of deficiencies within three days of delivery. In March, 1974, plaintiff sent a letter to AlumaShip, with a copy to defendant MonArk, setting out the deficiencies of which plaintiff was then aware. In April, 1974, a meeting was arranged on the boat in Greenville, Mississippi. Representatives from MonArk were present.
17) Following this meeting, MonArk sent a letter to plaintiff's attorney stating in part:
. . . MonArk Boat Company, without excepting [sic] any responsibility of the leaking windows in Mr. Tarter's boat, made an attempt to get the manufacturer of the windows to . . . look into the problem . . ..
MonArk Boat Company, in a spirit of cooperation and also in trying to resolve the present differences and without admitting any responsibility to Mr. Tarter . . . will provide the two men necessary to reseal the glass to the vinyl channel for the purpose of attempting to correct the problems in so far as the windows are concerned.
In response, plaintiff's attorney sent a letter which stated in part:
We do appreciate your spirit of cooperation, and of course we feel that your position is a correct one. Your aid and willingness should not affect the liabilities, and as far as I am concerned, speaking on behalf of Mr. Tarter, will not.
18) Plaintiff testified that in his opinion the boat as delivered had a fair market value of $80,000.00. The evidence indicated that it would cost approximately $37,000.00 to repair the boat. In addition, plaintiff incurred some incidental damages. He seeks to recover monies paid for a dock slip in West Alton, Missouri from September 1, 1973 through December 31, 1973 and from January 1, 1974 through June 30, 1974. At the time that this slip was rented, plaintiff was aware that the delivery of the boat would be delayed. Plaintiff spent $327.76 for parts to replace defective materials and parts on the boat. He also spent a total of $606.81 for servicing defective items on the boat. Plaintiff paid SteelShip an additional $2,300.35 for repairs performed in Pine Bluff, Arkansas; included in that sum was a bill for $792.00 for the services of Charles Alexander supplied by AlumaShip to act as crewman and instruct plaintiff on the boat's operation. Plaintiff also incurred expenses in the amount of $472.50 for dockage fees in Greenville, Mississippi where the boat was repaired on its trip up the Mississippi.

CONCLUSIONS OF LAW
This Court has jurisdiction over the subject matter and the parties to the suit in accordance with 28 U.S.C. § 1332.
Defendant MonArk argues that it cannot be liable for any breaches in connection with the construction of the boat since it assigned the contract to AlumaShip. Arkansas law, which applies herein by virtue of a provision to that effect in the contract, provides, however, that "[n]o delegation of performance relieves the party delegating of any duty to perform or any liability for breach.". Ark.Stat. § 85-2-210(1). In order to be relieved of such liability, there must be a novation. 6 Am.Jur.2d Assignments § 9, p. 124-25. A novation occurs where the contracting party accepts performance by the assignee and has knowledge that the assignor does not intend to be liable under the contract. 4 Corbin on Contracts § 866 (1961 ed.); 3 Williston on Contracts § 420 (3d ed.). MonArk could prove the novation through evidence of express consent by plaintiff, or by establishing an inference of such intention through plaintiff's actions. Simmons National Bank of Pine Bluff v. Dalton, 232 Ark. 359, 337 S.W.2d 667 (1960); International Minerals & Chemical Corp. v. Caplinger, 241 Ark. 1055, 411 S.W.2d 526 (1967). There was no express consent herein. The burden of establishing an implied consent rests upon MonArk and such consent must be established so "as to leave no room for doubt". Alston v. Bitely, 252 Ark. 79, 477 S.W.2d *1294 446, 454 (1972). It is the Court's conclusion that defendant has failed to meet its burden on this issue. The evidence failed to establish, with a requisite degree of certainty, that plaintiff had knowledge that MonArk did not intend to be liable under the contract.
There was a disclaimer of warranty in the contract. Such disclaimer, however, did not mention merchantability and thus does not preclude a claim of breach on such basis. Ark.Stat. § 85-2-316; Marion Power Shovel Co. v. Huntsman, 246 Ark. 152, 437 S.W.2d 784 (1969); Gramling v. Baltz, 253 Ark. 352, 361, 485 S.W.2d 183 (1972). Defendant argues, however, that plaintiff failed to give timely notice of the breach of warranty as required by Ark.Stat. § 85-2-607 which provides:
(3) Where a tender has been accepted
(a) The buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of the breach or be barred from any remedy . . .
See also Green Chevrolet Co. v. Kemp, 241 Ark. 62, 406 S.W.2d 142 (1966); Ingle v. Marked Tree Equipment Co., 244 Ark. 1166, 428 S.W.2d 286 (1968). A less rigorous test for the reasonableness of the time of notification applies to consumer buyers such as plaintiff. Comment 4, Ark.Stat.Ann. § 85-2-607; Lewis v. Mobil Oil Corp., 438 F.2d 500 (8th Cir. 1971). Plaintiff did notify AlumaShip of defects within three days. Defendant MonArk was aware of the same within three months. It is the Court's conclusion that with the confusion in plaintiff's mind as to the proper party to contact and as to the identity of the parties themselves, the notice given to MonArk within three months, where notice was given to MonArk's assignee within three days, is reasonable. The Court also notes that while acceptance of the goods precludes rejection of the same, it does not preclude the assertion of other remedies. Ark.Ann. § 85-2-607, Comment 3.
Ark.Ann.Stat. § 85-2-714(2) provides that
The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.
See also Kohlenberger, Inc. v. Tyson's Foods, Inc., 256 Ark. 584, 510 S.W.2d 555 (1974).
Plaintiff testified that the boat would have had a value of $160,000.00 if it had been as warranted. He further testified that the value of the boat accepted was $80,000.00. An owner of property may testify as to the property's value. Garrett v. Trimune, 254 Ark. 79, 491 S.W.2d 586 (1973); Boston Insurance Co. v. Farmer, 234 Ark. 1007, 356 S.W.2d 434 (1962); Phillips v. Graves, 219 Ark. 806, 245 S.W.2d 394 (1952). The Court concludes, however, that there was an insufficient basis for this valuation and is of the opinion that the cost of repair, $37,000.00, provides a stronger measure of the difference between the value of the boat accepted and the value of the boat as warranted. See White and Summers, Uniform Commercial Code § 10-2, p. 308. Accordingly, the Court concludes that an award of damages in the amount of $37,000.00 is appropriate.
Plaintiff claims that he is entitled to incidental damages totaling $5,673.00. Under Arkansas law, a buyer may recover incidental damages in a suit for breach of warranty; such damages may be recovered for "reasonable expense incident to the delay or other breach". Ark.Stat. § 85-2-715. Plaintiff's request for incidental damages for moneys paid for a boat slip in East Alton, Missouri from September 1, 1973 through December 31, 1973 will not be allowed. This suit is not one for breach of contract due to delay, but for breach of implied warranties. Plaintiff was aware that the boat was to be delivered late at the time that the slip was rented. Accordingly, these damages will not be allowed. The claim for slip rentals from January 1, 1974 through June 30, 1974 will also be disallowed. *1295 This expense is not an expense incident to the breach as the breach did not cause plaintiff to incur the same.
Incidental damages in the amount of $327.76 for various parts purchased to replace defective materials and parts on the boat will be allowed. Cf., Lewis v. Mobil Oil Corp., supra. Similarly, the expenses incurred for servicing the air conditioning unit, the generator, the fuel pumps, the oil and fuel filters, engine inspection and repair of tachometers will be allowed. The moneys paid to Steelship for parts and labor in repairing the boat while in Pine Bluff, Arkansas are recoverable as incidental damages. The Court, however, will not allow recovery of the moneys paid to SteelShip for the services of Charles Alexander. His services were in no way connected with the defects in the boat; he would have served as crewman even if the boat had not been defective. Plaintiff seeks recovery for additional wages paid to Mr. Alexander who threatened to leave the boat during a test run unless he was paid an amount in excess of his regular salary. The Court concludes that to the extent any recovery is available for this money, plaintiff should attempt recovery from Mr. Alexander himself.
Plaintiff's expenses in Greenville, Mississippi for docking fees while the boat was repaired and while negotiations were taking place will be allowed.
Thus, the Court concludes that plaintiff is entitled to recover incidental damages in the amount of $2,915.22 and damages in the amount of $37,000.00 for defendant's breach of warranties. Judgment will be entered accordingly.
Defendant has counterclaimed, seeking to recover the amount of the final payment under the contract which payment plaintiff made to AlumaShip. Defendant contends that if it is liable under the contract, plaintiff must pay the total contract price to it. It is clear, however, that a party may delegate its rights under the contract. In this case, MonArk assigned the contract to AlumaShip without working a novation; under these circumstances, AlumaShip had a right to the final payment as the assignee. The mere fact that MonArk assigned its rights under the contract without relieving itself of its liabilities thereunder is insufficient to sustain its counterclaim. 6 Am.Jur.2nd Assignments § 9, p. 194.