Lamar PETTUS and The Pettus Law Firm *v.*
James E. McDONALD II and Joan Reid, as the
Personal Representatives of the Estate of
James E. McDonald, *Deceased*

00-960                                      36 S.W.3d 745

Supreme Court of Arkansas
Opinion delivered February 1, 2001
[Petition for rehearing denied March 1, 2001.* ]

---

* ARNOLD, C.J., not participating.

*Wright, Lindsey & Jennings,* by: *H. Keith Morrison,* for appellants.

*Timothy O. Dudley*, for appellees.

DONALD L. CORBIN, Justice. This is a second appeal from a legal-malpractice case. In *McDonald v. Pettus*, 337 Ark. 265, 988 S.W.2d 9 (1999), this court affirmed the trial court's grant of summary judgment with regard to the tort claim, but reversed and remanded the dismissal of the claim of breach of contract, brought by the personal representatives on behalf of the estate of James E. McDonald. Appellants Lamar Pettus and the Pettus Law Firm now appeal the judgment awarding Appellees James E. McDonald II and Joan Reid, the personal representatives, damages in the amount of $342,907.45,[1] plus an additional $25,000 in attorney's fees. Our jurisdiction of this matter is pursuant to Ark. Sup. Ct. R. 1-2(a)(7).

The pertinent facts were set out by this court in the first appeal:

> James E. McDonald and his wife, Georgia McDonald, jointly owned property located in Fayetteville. In the fall of 1990, the McDonalds hired Lamar Pettus and the Pettus law firm (hereinafter collectively referred to as "Mr. Pettus") to prepare their wills. In his will, James gave his interest in the Fayetteville property to his children of a prior marriage, James E. McDonald, II, Joan Reid, and Janis Beall (the "children"). In contrast, Georgia did not specifically mention the Fayetteville property in her will.
>
> In October of 1991, the McDonalds sold the Fayetteville property in exchange for promissory notes that were worth approximately $250,000. The McDonalds then hired Mr. Pettus to prepare codicils to their wills, which were executed on February 25, 1994. In his codicil, James left his interest in the promissory notes to his children. Again, Georgia did not specifically mention either the Fayetteville property or the promissory notes derived therefrom in her codicil. The dispute in this case centers upon whether James and Georgia McDonald hired Mr. Pettus to also prepare an assignment whereby Georgia would convey her interest in the promissory notes to either her husband, James McDonald, or directly to James's children.
>
> James died on April 16, 1994, before Georgia signed any assignment of her interest in the promissory notes. After her

---

[1] The jury returned a verdict in favor of Appellees in the amount of $400,000, but following a concession that such an award exceeded the maximum amount sustained by the evidence, Appellees consented to a reduction of the award.

husband's death, Georgia refused to relinquish her interest in the promissory notes to the children

    Soon thereafter, the children filed a legal-malpractice claim against Mr. Pettus. In their complaint, the children alleged that Mr. Pettus was "charged with the responsibility of preparing assignments" of the promissory notes and "overseeing the execution" of those assignments. The children contended that Mr. Pettus's failure to discharge that responsibility was a tort and a breach of contract. The complaint was later amended to add as plaintiffs James E. McDonald, II, and Joan Reid, as personal representatives of their father's estate, in addition to naming them as plaintiffs in their individual capacities as heirs.

    The trial court dismissed, by summary judgment, the children's individual claims against Mr. Pettus because "A.C.A 16-22-310 precludes the Defendants herein from liability for civil damages in this cause of action." Then on April 24, 1998, the trial court entered a second order of summary judgment dismissing the remaining legal-malpractice claims asserted by the personal representatives of James McDonald's estate. The trial court explained that summary judgment was proper because the personal representatives did not have standing to bring, on James McDonald's behalf, a malpractice claim against Mr. Pettus, and even if they did, the facts taken as true did not "rise to the level of establishing malpractice on the part of the Defendant."

337 Ark. at 268-70, 988 S.W.2d at 11. This court affirmed the trial court's dismissal of all the children's claims, as well as the personal representatives' tort claim. We reversed and remanded, however, the trial court's grant of summary judgment on the personal representatives' breach-of-contract claim. Upon remand, the jury awarded judgment in favor of Appellees. Appellants' motions for directed verdict or for judgment notwithstanding the verdict were denied. Appellees were also awarded attorney's fees in the amount of $25,000. Appellants initially filed a separate appeal with regard to the issue of the attorney's fees, but that appeal was subsequently consolidated with the present appeal.

## I. Jury Instruction

    ■ For their first point on appeal, Appellants argue that the trial court erred in instructing the jury on a theory of implied contract. Appellees argue that such an argument may not be considered because Appellant failed to raise it below. We disagree.

At the close of the evidence, Appellees proffered the following jury instruction:

> A contract may be either express or implied. An express contract is proved by showing that the parties to the contract had a written or oral agreement that imposed obligations on each party. An implied contract may be inferred from the acts of the parties or from circumstances which demonstrate the intention of the parties.

Counsel for Appellants lodged the following objection to this proposed jury instruction:

> Defendants object to the instruction offered by Plaintiffs that starts "A contract may be either express or implied." As a matter of law, as we argued in our directed verdict motion, it's our contention that the terms of this contract had to be express and there is no implied contract under the facts of this case, so we would object to it just on the matter of law on that one.

In their motion for directed verdict made at the close of Appellees' case, Appellants argued that there had been no evidence presented of any specific terms of a contract with Lamar Pettus or his firm to do an assignment to the estate. Clearly, Appellants wanted the case limited on an express-contract theory, rather than allowing the jury to determine that there may have been an implied contract between the parties. We believe that Appellants' objection was sufficient to preserve his argument for appeal.

Turning now to the merits of this argument, we reject Appellants' contention that it was improper to instruct the jury on an implied-contract theory. This court has consistently held that a party is entitled to a jury instruction when it is a correct statement of the law, and there is some basis in the evidence to support the giving of the instruction. *Arthur v. Zearley*, 337 Ark. 125, 992 S.W.2d 67 (1999); *Edwards v. Stills*, 335 Ark. 470, 984 S.W.2d 366 (1998); *Coca-Cola Bottling Co. v. Priddy*, 328 Ark. 666, 945 S.W.2d 355 (1997); *Parker v. Holder*, 315 Ark. 307, 867 S.W.2d 436 (1993). Jury instructions stating abstract legal propositions without any evidentiary basis should not be given. *St. Louis S.W. Ry. Co. v. Grider*, 321 Ark. 84, 900 S.W.2d 530 (1995). Only where reasonable minds will not differ that the evidence does not establish a basis for a jury instruction, is it error for the trial court to give the instruction. *Skinner v. R.J. Griffin & Co.*, 313 Ark. 430, 855 S.W.2d 913 (1993).

■ ■ First, the instruction given in the instant matter was a correct statement of the law. It simply differentiated between an express and implied contract. Appellants' contention that the instruction made no distinction between an implied-in-law or an implied-in-fact contract is disingenuous. The jury instruction is nothing more than the definition of an implied-in-fact contract, one inferred from the acts of the parties or from circumstances demonstrating the intention of the parties. In contrast, an implied-in-law contract is not even a contract at all, but an obligation imposed by law to do justice even though no promise was ever made or intended. *See* Calamari & Perillo, *Contracts* § 1-12 (3d ed. 1987). Finally, this court has previously recognized that an attorney may be sued under the theory of breach of an implied contract. *Lemon v. Laws*, 313 Ark. 11, 852 S.W.2d 127 (1993).

■ Moreover, there was some evidence to support the instruction on an implied-contract theory. First, it was undisputed that Appellants were hired to draft the wills of James and Georgia McDonald. The evidence also demonstrates that the intent of those wills, to convey their interest in the property to James's children, could never be effectuated without the completion of an assignment of Georgia's interest in the property. Appellees each testified that they had previously discussed the will with their father, and that he had been very adamant that his wishes be carried out. According to their testimony, he assured them that all necessary steps had been taken to effectuate his will. Also, according to Appellees, their father never mentioned anyone, other than Appellant, who was involved with the will or the assignment. Accordingly, we believe there was some basis in the evidence to instruct the jury on a theory of implied contract. The fact that there was some evidence to support the giving of this instruction does not mean, however, that there was substantial evidence to support the jury's verdict.

## II. Substantial Evidence

■ Appellants moved for a directed verdict at the conclusion of Appellees' case and also moved for a judgment notwithstanding the verdict at the conclusion of the trial. Both motions were denied, and Appellants now argue that there was insufficient evidence to support the jury's verdict. This court has repeatedly held that when reviewing a denial of a motion for a directed verdict, we

determine whether the jury's verdict is supported by substantial evidence. *Farm Bur. Mut. Ins. Co. v. Foote*, 341 Ark. 105, 14 S.W.3d 512 (2000); *State Auto Prop. & Cas. Ins. Co. v. Swaim*, 338 Ark. 49, 991 S.W.2d 555 (1999). Substantial evidence is evidence of sufficient force and character to compel a conclusion one way or the other with reasonable certainty; it must force the mind to pass beyond mere suspicion or conjecture. *Id.* We review the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. *Id.*

■ In originally remanding this case, this court stated:

> Furthermore, we acknowledge that summary judgment was erroneous as to the personal representatives' breach-of-contract claim because there were material factual disputes as to whether Mr. Pettus agreed to prepare any assignments and present them to Georgia McDonald for execution, and if so, whether the assignments were to provide for Georgia McDonald to assign her interest to her husband, James McDonald, or directly to the children. Likewise, whether Georgia McDonald would have executed any assignments presented to her before the decedent's death is also a disputed factual issue. These are all relevant questions as to whether a contract to prepare the assignments existed, whether it was breached, whether Mr. McDonald suffered any injury due to the alleged breach, and whether the damages are speculative.

*Pettus*, 337 Ark. at 280, 988 S.W.2d at 17. After reviewing the evidence introduced at trial, we are convinced that Appellees failed to present substantial proof to resolve the material factual disputes previously identified by this court.

As to the issue whether Pettus agreed to draft and present to Georgia an assignment, Pettus denied ever agreeing to draft the assignment. Pettus testified that when the McDonalds originally approached him in the fall of 1990 about drafting their wills, he believed that Mr. McDonald was the sole owner of the Fayetteville property. He further stated that this belief was consistent with the McDonalds' prior wills drafted by two other attorneys in 1979. According to Pettus, he did not learn until September of 1991 that the McDonalds owned the Fayetteville property jointly. He discovered their joint-ownership status when he received a deed to the property and was asked to prepare some instruments related to the sale of the property. Pettus stated that he then advised the McDonalds that it was necessary to take action if their intent was

still for the children to receive the interest in the property. Pettus stated that the McDonalds said they would take care of it, but never asked him to draft anything. The assignment was again discussed in 1994, at the time that Pettus drafted the codicils for the McDonalds' wills. He was told the notes had been assigned, and when he asked for copies, Mr. McDonald assured him that he would send him copies. Pettus testified that during these conversations, Mrs. McDonald was present and never contradicted the statements of her husband.[2]

The only evidence introduced to contradict the testimony of Pettus was the testimony of Appellees.[3] Both Appellees testified that their father had discussed his will with each of them, with Georgia present. They claimed that their father indicated that under his will, Appellees would be entitled to his interest in the Raw Wood notes. He also assured them that everything was in order to effectuate his will. Both Appellees denied, however, ever hearing their father use the term assignment. They also denied that their father ever told them that Appellants had drafted, or even agreed to draft, the assignment. Moreover, neither Appellee ever had any communication with Appellants regarding the drafting of the assignment, and they conceded that they had no knowledge of the terms of any agreement between Appellants and the McDonalds.

Appellees attempt to argue that there was sufficient evidence to support the verdict because Pettus's testimony is considered disputed as a matter of law, and thus the jury was allowed to disbelieve that testimony. It is true that in *Ester v. National Home Ctrs., Inc.*, 335 Ark. 356, 981 S.W.2d 91 (1998), this court held that the testimony of an interested party is taken as disputed as a matter of law. Appellees fail to recognize, however, that under *Ester*, their testimony is also disputed as a matter of law. Clearly, Appellees are interested parties in this action, because they, as heirs, stand to gain from any judgment awarded to the estate.

---

[2] Georgia McDonald died on January 24, 1998. Prior to her death, Mrs. McDonald executed an affidavit stating that it was never her intent to assign her interest in the Raw Wood notes to her husband or his children.

[3] Prior to trial, Appellants filed a motion in limine challenging the admission of certain statements made by Appellees on the ground that the statements were inadmissible hearsay. The trial court denied the motion, but Appellants do not raise this issue as a point on appeal.

This court has long held that substantial evidence is not present where a factfinder is merely given a choice of possibilities that require the jury to speculate or guess as to a cause. *Arkansas Kraft v. Cottrell*, 313 Ark. 465, 855 S.W.2d 333 (1993); *Arkansas Power & Light v. Cash*, 245 Ark. 459, 432 S.W.2d 853 (1968). That is precisely what happened in the present case. The jury was allowed to choose between two competing versions of events, neither of which is corroborated by other evidence. Even viewing the evidence in a light most favorable to Appellees, it is apparent that the evidence amounted to little more than speculation, and thus, the jury's verdict was not supported by substantial evidence.

Another material fact not proven by the evidence was who the assignment would benefit. Nothing in the record indicates whether the assignment would transfer Georgia's interest in the Fayetteville property to her husband or to his estate. It is quite possible, as Appellants point out, that the assignment could have been drafted in a manner that assigned Georgia's interest directly to the children, and not the estate. In fact, in the original complaint, the parties claimed that Mr. McDonald hired Pettus to obtain an assignment of the Raw Wood notes to the plaintiffs. It was not until they amended their complaint that Appellees claimed that the assignment would pass the proceeds of the notes through the estate to Appellees.

Appellees' failure to establish who the assignee was to be is critical because this court specifically held that the only cause of action that could lie in this matter was a breach-of-contract claim between Appellants and the *estate* of James McDonald. We previously dismissed the claims of Mr. McDonald's children because of a lack of privity. Absent the proof that the assignment was to benefit the estate, we cannot say that there was a breach of contract between Appellants and Mr. McDonald or his estate. Appellees failure to prove that the estate was the intended beneficiary is thus fatal to their cause of action.

### III. Attorney's Fees

Finally, Appellants' appeal of the $25,000 award of attorney's fees was consolidated with the present action. Having reversed the judgment in favor of Appellees, it is unnecessary for this court to address Appellants' argument on this point. This court has consistently held that when a judgment in favor of a prevailing

party is reversed, any award of attorney's fees must also be reversed. *See Burford Distrib., Inc. v. Starr*, 341 Ark. 914, 20 S.W.3d 363 (2000); *Bendinger v. Marshalltown Trowell Co.*, 338 Ark. 410, 994 S.W.2d 468 (1999).

Reversed and dismissed.

ARNOLD, C.J., not participating.