JAG CONSULTING *a/k/a* Glad Industries, Inc. *v.*
Gerald EUBANKS

CA 01-1183 72 S.W.3d 549

Court of Appeals of Arkansas
Division II
Opinion delivered April 24, 2002

*Streetman, Meels, & McMillan,* by: *Thomas S. Streetman,* for appellant.

*The Harper Law Office, P.L.L.C.,* by: *Greg Fallon* and *Kenneth A. Harper,* for appellee.

ANDREE LAYTON ROAF, Judge. This tort case results from a lawsuit filed by appellee, Gerald Eubanks, against appellant, JAG Consulting, for its conversion of tools and equipment that belonged to appellee. The jury returned a verdict awarding appellee $18,000.00 in compensatory damages and $11,000.00 in punitive damages. JAG Consulting has appealed, arguing four points of error: (1) that the trial court erred in denying its motion for directed verdict because there was no substantial evidence to establish the fair market value of the tools and equipment allegedly converted; (2) that the trial court erred in permitting appellee to testify from a list he prepared based on the replacement cost of the tools and equipment; (3) that the trial court erred in permitting appellee's wife to testify to lost income that appellee sustained as a result of the conversion of the tools and equipment; (4) that the trial court erred in allowing appellee's wife to testify to the value of her property because she was not a party to the litigation. We agree with the first and fourth points and reverse and remand.

On December 22, 1993, officers from the Ashley County Sheriff's Department and the Hamburg Police Department executed search warrants on appellee's home and shop. The officers were searching for tools and equipment belonging to appellant, then known as Glad Industries (Glad). During the search, the officers were assisted by Jim Atkins, Glad's safety and security officer, who helped identify Glad's tools. A deputy made a list of the seized items during the search, which was later introduced at trial as Defendant's Exhibit 1. Some of the items seized had been purchased by appellee at an auction that Glad conducted in 1983.

Before the auction, Glad had used orange paint to mark its tools. After the auction, Glad used an orange and yellow paint scheme to mark its tools. Some of the tools and equipment claimed by appellee bore an orange and yellow paint scheme. The tools and equipment seized during the search were delivered to Glad where its employees went through the seized items and identified those that did not belong to Glad. Those items were returned to the Sheriff's Department and later to appellee.

Criminal charges were filed against appellee and Eddie Anthony in April 1994. Anthony, who was Glad's purchasing agent in charge of its tool room, was terminated on the day of the search. Glad had a policy at that time of allowing employees to take Glad's tools and equipment home for their personal use. The criminal charges were later dismissed against both appellee and Anthony.

After the criminal charges were dismissed, appellee filed suit against Glad alleging that Glad had converted the seized items by not returning them to him and sought unspecified compensatory damages. Appellee amended his complaint to seek punitive damages. As noted, the jury returned a verdict in appellee's favor, and this appeal followed.

In its first point, appellant alleges that the trial court erred in denying the appellant's motion for a directed verdict because there was no substantial evidence to establish the fair market value of the tools and equipment allegedly converted by appellant.

It has been repeatedly held that, when reviewing a denial of a motion for a directed verdict, we determine whether the jury's verdict is supported by substantial evidence. *Pettus v. McDonald*, 343 Ark. 507, 36 S.W.3d 745 (2001). Substantial evidence is evidence of sufficient force and character to compel a conclusion one way or the other with reasonable certainty; it must force the mind to pass beyond mere suspicion or conjecture. *Id.* We review the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. *Id.*

■ ■ In *Ford Motor Credit Co. v. Herring*, 267 Ark. 201, 589 S.W.2d 584 (1979), 'the supreme court held that the proper measure of damages for the conversion of personal items was their fair market value at the time and place of the conversion. The court went on to hold that evidence based upon purchase, replacement, or rental prices was improper. *Id.* Because of the lack of evidence of fair market value, the supreme court reversed a judgment in favor of Herring. This measure of damages has been restated several times since *Herring. See McQuillan v. Mercedes-Benz Credit Corp.*, 331 Ark. 242, 961 S.W.2d 729 (1998); *Elliott v. Hurst*, 307 Ark. 134, 817 S.W.2d 877 (1991); *Burdan v. Walton*, 286 Ark. 98, 689 S.W.2d 543 (1985). Fair market value is defined as the price the personalty would bring between a willing seller and a willing buyer in the open market after negotiations. *Minerva Enters., Inc. v. Howlett*, 308 Ark. 291, 824 S.W.2d 377 (1992); *Southern Bus Co. v. Simpson*, 214 Ark. 323, 215 S.W.2d 699 (1948). *See also* AMI Civil 4th, 2221.

In his pretrial deposition, appellee provided a list of items that he alleged were converted by appellant containing values for each item. At trial, appellee testified from this list. The values were derived either from wholesale price lists or from receipts that appellee had for the items. A copy of the list without the values was introduced as Plaintiff's Exhibit 1.

Furthermore, this list was virtually identical to the list made by the deputy during the search, but appellee had also added the contents of four tool boxes that had been seized during the raid. Most of the evidence regarding the value of the tools and equipment seized from appellee came from the testimony of appellee himself. When counsel first began questioning appellee about the value of items on his list, appellant objected because appellee was going to testify as to replacement values that had been obtained from two wholesale price lists and from receipts he had for the purchase of some of the items. The objection was that the values given were not determined by the fair market value measure found in *Herring*, specifically citing the case. Appellee testified that he did not understand the meaning of "fair market value" and that he thought it meant replacement cost. Appellee also testified

that many of the tools came with lifetime guarantees, without identifying the specific items.

■ Throughout his testimony, appellee referred to the current cost of a *new* item, less ten percent. Appellee testified to the replacement costs of items. Appellee also testified that he had used several items over the years and still gave the current replacement cost instead of the fair market value at the time of the conversion. All of the values given were before ten percent was subtracted for depreciation. Appellee testified at trial that his opinion was based on the replacement cost, less ten percent. Appellee was qualified as an expert by the trial court. As such, he could base his opinion on information he gained from others, including other experts. *See Phillips v. Graves*, 219 Ark. 806, 245 S.W.2d 394 (1952). No effort was made to relate the value at the time of the 1993 seizure. The trial court instructed the jury during this testimony to disregard appellee's answer that the tools and equipment had a total value of $20,655.37, and appellee offered no other testimony on value in response to this ruling. Appellant moved for a directed verdict at the conclusion of appellee's case, at the conclusion of all the proof, and also moved for a judgment notwithstanding the verdict at the conclusion of the trial. The motions were denied, and appellant now argues that there was insufficient evidence to support the jury's verdict.

■ ■ It is the duty of the judge to instruct the jury, and each party to the proceeding has the right to have the jury instructed upon the law of the case with clarity and in such a manner as to leave no grounds for misrepresentation or mistake. *Long v. Lampton*, 324 Ark. 511, 922 S.W.2d 692 (1996); *Dorton v. Francisco*, 309 Ark. 472, 833 S.W.2d 362 (1992). In *Lewis v. Phillips*, 223 Ark. 380, 266 S.W.2d 68 (1954), the court stated:

> In *Benton Gravel Co. v. Wright*, 206 Ark. 930, 175 S.W.2d 208, we said: "It is often difficult for a court to determine the true measure until all the evidence is in. . . . If there be different modes of measuring the damages, depending on the circumstances, the proper way is to hear the evidence, and to instruct the jury afterwards according to the nature of the case."

*Lewis,* 223 Ark. at 383, 266 S.W.2d at 69-70. Here, appellant called the trial court's attention to the proper measure of damages and cited the *Herring* case. The trial court also realized the proper measure of damages when it sustained appellant's motion to strike appellee's testimony as to the total value of the items taken when that testimony was based upon book value less ten percent without consideration of the value at the time of the 1993 seizure. The transcript of the instructions being read to the jury indicates that the jury was *not* given any instruction based on AMI 2221, which would describe the measure of damages as to the fair market value of the tools and equipment at the time and place of the conversion. The jury was not instructed as to *any* method by which to determine appellee's damages. The written instructions are not included in the record.

 Evidence must exist which affords a basis for measuring the plaintiff's loss with reasonable certainty, and the evidence must be such that the jury may find the amount of the loss by reasonable inferences from established facts, and not by conjecture, speculation or surmise. *Bank of Cabot v. Ray,* 279 Ark. 92, 648 S.W.2d 800 (1983); *Missouri & Ark. Ry. v. Treece,* 210 Ark. 63, 194 S.W.2d 203 (1946); *Willis v. Triplett,* 10 Ark. App. 247, 663 S.W.2d 201 (1984). Once appellee's valuations are excluded, there simply is no evidence in the record that the jury could look to in determining appellee's damages without resorting to speculation or conjecture. Therefore, the trial court erred in not granting the motion for a directed verdict.

 Appellant argues a related issue for its second point, that the trial court erred in permitting appellee to testify from a list that appellee prepared based on the replacement cost of the tools and equipment. Appellee prepared a list of the items taken by the Sheriff's Department and police during the search. This list, without values, was introduced into evidence without objection by appellant. The objections to appellee's testimony were based on hearsay and the fact that the values were based on replacement cost instead of fair market value. This list was identical to the list prepared during the search by the deputy sheriff and introduced into evidence as Defendant's Exhibit 1. The introduction of the *list itself* was not error. First, the list does not contain

any values. Second, the same information was before the jury earlier in the form of Defendant's Exhibit 1, which had been introduced into evidence through the testimony of former Sheriff Bill Hudson, *prior* to testimony from appellee. It has long been the rule that there is no prejudice in admitting evidence that is merely cumulative or repetitious of other evidence admitted without objection. *See Madden v. Aldrich*, 346 Ark. 405, 58 S.W.3d 342 (2001); *Eliott v. State*, 342 Ark. 237, 27 S.W.3d 432 (2000); *Callahan v. Clark*, 321 Ark. 376, 901 S.W.2d 842 (1995).

In its third point, appellant argues that, because it was a violation of the "best-evidence rule," the trial court erred in permitting appellee's wife to testify to income that appellee lost as a result of the conversion of appellee's tools and equipment. Appellee attempted to establish through the testimony of Raynell Eubanks, his wife, a loss of income from appellee's business resulting from the seizure and conversion of the tools and equipment. Appellant objected on the grounds that the best evidence of lost income would be appellee's income tax returns. The trial court overruled the objection. When appellee sought to introduce testimony from Ms. Eubanks from the tax returns, appellant objected because the returns had not been disclosed or produced during discovery. The trial court agreed and refused to allow Ms. Eubanks to testify from the records but still allowed her to testify as to the amount of appellee's lost income. Ms. Eubanks testified that she kept the books for her husband and prepared the information for submission to the accountant to prepare the tax returns.

Arkansas Rule of Evidence 1002 provides that, "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by rules adopted by the Supreme Court . . . or by statute." When a transaction occurs where a written record is made, it is not necessary to produce the record when there is testimony to prove the transaction. It is only when the *writing itself* must be proved that the writing must be produced. *Canady v. Canady*, 285 Ark. 378, 687 S.W.2d 833 (1985); *Lin Mfg. Co. v. Courson*, 246 Ark. 5, 436 S.W.2d 472 (1969). In the instant case, the issue was not the contents of a writing — the tax returns — but rather the amount of lost income

that had been suffered by appellee. The best-evidence rule does not apply where a party seeks to prove a fact which has an existence independent of any writing, even though the fact might have been reduced to, or is evidenced by, a writing. *R&R Assocs., Inc. v. Visual Scene, Inc.*, 726 F.2d 36 (1st Cir. 1984); *Herzig v. Swift & Co.*, 146 F.2d 444 (2d Cir. 1945); *Sayen v. Rydzewski*, 387 F.2d 815 (7th Cir. 1967); *Continental Ill. Nat'l Bank & Trust Co. v. Eastern Ill. Water Co.*, 31 Ill. App. 3d 148, 334 N.E.2d 96 (1975).

■ Ms. Eubanks testified that she kept the books and records for her husband's business and compiled the figures concerning income and expenses prior to giving it to the accountant for preparation of the tax returns. Thus, she has firsthand knowledge of the information. No evidentiary rule prohibits a witness from testifying to a fact simply because the fact also can be supported by written documentation. *R&R Assocs., supra.*

Appellant argues for his fourth point that, because Ms. Eubanks was not a party to the action, the trial court erred in allowing her to testify as to the value of personal property belonging to her and allegedly converted by appellant. On the first day of trial, appellee testified that certain items included on the list of items actually belonged to his wife. Appellant filed a motion *in limine* seeking to prohibit Ms. Eubanks from testifying as to the value of any items belonging to her. The trial court overruled the motion, and Ms. Eubanks was permitted to testify as to which of her tools were seized. She valued those tools at $925.

■ ■ It is a fundamental principle that the:

> courts are instituted to afford relief to persons whose rights have been invaded . . . by the defendant's conduct, and to. give relief at the instance of such persons; a court may and properly should refuse to entertain an action at the instance of one whose rights have not been invaded or infringed, as where he seeks to invoke a remedy in behalf of another who seeks no redress.

59 AM. JUR. 2D *Parties* § 26 (1971). Furthermore, it is a general rule that "[I]f an injury is done to personal property, the right of action is in the then owner alone, and not in any subsequent purchaser or successor in the title." *Id.*

Daughhetee v. Shipley, 282 Ark. 596, 599, 669 S.W.2d 886, 887–88 (1984).

In *Daughhetee*, Ray Shipley owned a truck that was damaged in a collision with Daughhetee's cow. After the collision but prior to suit being filed, Shipley died of causes unrelated to the accident. His heirs brought suit for damages to the truck without having a personal representative appointed to sue on behalf of the estate. Daughhetee's motion to dismiss because of the heirs' lack of standing to sue was overruled by the trial court, and judgment was entered against Daughhetee. On appeal, the supreme court agreed that the heirs lacked standing because they were not the proper party and reversed the judgment in favor of Shipley's heirs. *Daughhetee* also held that it was not harmless error to allow a non-party to institute legal action. In *Norman v. Norman*, 347 Ark. 682, 66 S.W.3d 635 (2002), the supreme court defined a "party" as:

> [A] person concerned or having or taking part in any affair, matter, transaction, or proceeding, considered individually. A "party" to an action is a person whose name is designated on record as plaintiff or defendant. [The] term, in general, means one having right to control proceedings, to make defense, to adduce and cross-examine witnesses, and to appeal from a judgment.
>
> "Party" is a technical word having a precise meaning in legal parlance; it refers to those by or against whom a legal suit is brought, whether in law or equity, the party plaintiff or defendant, whether composed of one or more individuals and whether natural or legal persons; all others who may be affected by the suit, indirectly or consequently are persons interested but not parties.

*Norman*, 347 Ark. at 685–86, 66 S.W.3d at 638 (quoting *Black's Law Dictionary* 1122 (6th ed. 1990)).

 Appellee argued to the jury in closing arguments that he should be allowed to recover for his wife's property. Because Ms. Eubanks was not a party, it was error for the trial court to allow her to testify as to the value of her separate property. Where the jury's verdict is rendered on a general verdict form, it is an indivisible entity or, in other words, a finding upon

the whole case. *J.E. Merit Constructors, Inc. v. Cooper*, 345 Ark. 136, 44 S.W.3d 336 (2001); *Pearson v. Henrickson*, 336 Ark. 12, 983 S.W.2d 419 (1999); *The Home Co. v. Lammers*, 221 Ark. 311, 254.S.W.2d 65 (1952). Because it is impossible to determine from the jury's verdict whether damages for Ms. Eubanks's property were included in the award, this case must be reversed.

Appellant asks that the case be reversed and dismissed. We agree that the trial court erred in not granting the directed verdict, but we find it appropriate in this situation to remand. This practice has been followed in other situations where the case was reversed because of insufficiency of the evidence. The supreme court has stated:

> Our ordinary procedure in reversing judgments in law cases is to remand for another trial, rather than dismiss the cause of action. It is only where it clearly appears that there can be no recovery that we consider it proper to dismiss the cause. . . . The evidence might well have been much more developed than it was. This Court has held even where a judgment based on a jury verdict is reversed for insufficiency of the evidence to support it, there may be circumstances which justify remanding the case for new trial.

*Hayes Bros. Flooring Co. v. Carter, Adm'x*, 240 Ark. 522, 525, 401 S.W.2d 6, 8 (1966).

In *St. Louis S.W. Ry. Co. v. Clemons*, 242 Ark. 707, 415 S.W.2d 332 (1967), the court said:

> The general rule is to remand common law cases for new trial. Only exceptional reasons justify a dismissal. One of the exceptions is an affirmative showing that there can be no recovery. *Pennington v. Underwood*, 56 Ark. 53, 19 S.W. 108 (1892). There it was said that when a trial record discloses "a simple failure of proof, justice would demand that we remand the cause and allow plaintiff an opportunity to supply the defect."

See also *Little Rock Newspapers, Inc. v. Dodrill*, 281 Ark. 25, 660 S.W.2d 933 (1983); *Home Ins. Co. v. Harwell*, 263 Ark. 884, 568 S.W.2d 17 (1978); *Southwestern Underwriters Ins. v. Miller*, 254 Ark. 387, 493 S.W.2d 432 (1973). We have held this procedure applicable even when no proof was offered on an issue, and where it was demanded by simple justice or where it was not impossible

that the deficiency in proof could be supplied. *Follett v. Jones*, 252 Ark. 950, 481 S.W.2d 713 (1972); *Southern Farm Bur. Cas. Ins. v. Gottspoñer*, 245 Ark. 735, 434 S.W.2d 280 (1968). In this case, it does not clearly appear from the record that there can be no recovery, nor has there been any affirmative showing that such is the case.

Reversed and remanded.

STROUD, C.J., and PITTMAN, J., agree.