THE HOME COMPANY v. LAMMERS.

4-9937                                    254 S. W. 2d 65

Opinion delivered December 8, 1952.

Rehearing denied January 12, 1953.

*Sam Rorex* and *L. P. Biggs,* for appellant.

*John F. Gibson* and *Thomas L. Cashion,* for appellee.

GEORGE ROSE SMITH, J.   This is an action in unlawful detainer brought by the appellants to recover possession of Sterling Plantation, which comprises more than a thousand acres.   When the complaint was filed in February of 1951 it was alleged that the annual rental value of the property is $20,000, and the plaintiffs obtained a writ of possession by posting a $40,000 bond. Ark. Stats. 1947, §§ 34-1506 and 34-1507.   The defendant did not file a cross-bond in order to retain possession during the pendency of the suit.   By answer and cross-complaint the defendant admitted the above rental value but contended that he was entitled to possession during 1951, 1952, and 1953.   He further asserted that his eviction at the commencement of the suit was wrongful and had damaged him in the sum of $16,531.   Trial before a jury resulted in a verdict for the defendant for $17,000, upon which the court rendered judgment for $16,531, the amount sued for by the defendant.   It is now contended by the appellants' counsel, who did not participate in the trial below, that the court should have entered judgment for the plaintiffs notwithstanding the verdict and in the alternative that the judgment is excessive.

The Home Company is a corporation owned by the other two appellants, G. B. Oliver, Jr., and his wife.   On February 4, 1948, this company leased the plantation to Lammers for 1948, 1949, and 1950, with an option by which Lammers might extend the lease for three additional years by giving six months notice.   In both the pleadings and the proof the pivotal issue was apparently whether Lammers had exercised his option to extend the term.

Oliver testified in effect that Lammers' operation of the farm was satisfactory in 1948 and 1949, but in 1950

Lammers planted only about 300 acres and also wrongfully paid personal debts with money advanced by Oliver for the making of a crop. According to Oliver, Lammers did not request a renewal of the lease; instead he and Oliver orally agreed that during 1951 Lammers would retain only the 300 acres that had been planted to rice in 1950, the rest of the land to be turned back to the lessor. Early in 1951 Oliver had an opportunity to sell this and another farm for $200,000, and then for the first time Lammers contended that he had exercised his privilege of extending the lease for three years. Oliver, treating this assertion as a repudiation of the oral contract for 1951, elected to terminate that agreement and brought this suit to regain possession. Oliver's testimony is corroborated by the purchasers who bought the two farms.

Lammers' version is directly at variance with Oliver's. Lammers testified that on several occasions, all more than six months before the end of the primary term, he notified Oliver that he was exercising his option to renew. Lammers says that Oliver assured him that he could stay for life if he wanted to. And naturally Lammers denies the making of the superseding oral agreement by which he was to retain 300 acres for 1951 only.

On this proof there would ordinarily have been a clear-cut issue for the jury; that is, had the lease been extended? But when the time came for the case to go to the jury three forms for the verdict were suggested, apparently by the court. Form 1 was an outright finding for the plaintiffs. Form 2 was an equally comprehensive finding for the defendant, with an assessment of damages for the eviction in 1951 and a restitution of possession for 1952 and 1953. Form 3 read as follows:

"We, the jury, find that the original contract was not renewed but that a new contract was entered into between the parties hereto for the year 1951 and assess the defendant Lammers' damages in the sum of . . ."

The plaintiffs at first objected to Form 3, but when the court then offered to discard it the plaintiffs with-

drew their objection and asked that this form be given to the jury. This was done, and the jury later returned its verdict on the third form, fixing the damages at $17,000. The plaintiffs at once moved for judgment notwithstanding the verdict, upon the ground that since the jury had found that the lease had not been renewed the defendant was not entitled to recover under his own theory or that of the plaintiffs. In the latter connection the court had instructed the jury that if Lammers, after having made the oral contract for 1951, later sought to extend it to the whole plantation, the plaintiffs were justified in demanding the return of the entire acreage and in bringing this action. The court overruled the motion for judgment notwithstanding the verdict.

On this first point the appellants' basic contention is that the submission of Form 3 was in substance the propounding of a special interrogatory to the jury, and hence the court should have entered judgment for the plaintiffs in view of the jury's finding that the original contract had not been renewed. It is evidently true, as argued by the appellants, that this finding, if it stood alone, would prevent Lammers from recovering under the testimony of either party. But it must be remembered that the plaintiffs requested the submission of Form 3, and we have often held that a litigant is not entitled to a new trial on account of an error which he induced the trial court to commit. For instance, when the losing party has asked that a particular issue be submitted to the jury he cannot complain that all the evidence shows the verdict on this issue to be wrong. *Western Union Tel. Co.* v. *Cowardin*, 113 Ark. 160, 168 S. W. 1133. That principle is controlling here unless it can be said that Form 3 was merely a special interrogatory.

We are unable to construe this form so narrowly. To begin with, by its language Form 3 is more than a response to a specific question. It includes also a finding upon the whole case, and it is familiar law that a general verdict is an indivisible entity. *Martin* v. *Street Imp. Dist. No. 349*, 180 Ark. 298, 21 S. W. 2d 430. Fur-

thermore, the attendant circumstances rebut the suggestion that Form 3 was nothing more than an inquiry. Had this form not been used the plaintiffs stood either to win a complete victory under Form 1 or to suffer a complete defeat under Form 2, the latter entailing not only an award of damages for 1951 but also the loss of possession for two more years. In this situation Form 3 offered the jury something in the nature of a compromise which, although inconsistent with the theory of either litigant, nevertheless permitted an award of damages to Lammers without restoring his possession for two years. By requesting the submission of Form 3 the plaintiffs in effect represented to the jury that it was possible for Lammers to recover damages even though the original contract had not been renewed. The jury acted upon that understanding, and it is now too late for the plaintiffs to insist that in legal effect the jury's award of substantial damages to Lammers upon Form 3 is exactly the same as a verdict for the plaintiffs upon Form 1.

In the alternative the appellants contend that the judgment is excessive. Had the case gone to the jury under correct instructions there might be merit in this contention. We have held that when the tenant prevails in unlawful detainer his measure of damages is the difference by which the rental value of the property exceeds the agreed rent, together with such special damages as may be incident to the unlawful eviction. *McElvaney* v. *Smith*, 76 Ark. 468, 88 S. W. 981. Here Lammers offered proof of special damages slightly in excess of $1,000, but there is not much evidence to indicate that the rental value of the plantation exceeded the crop rent that he had agreed to pay. Upon such proof the tenant's general damages would ordinarily be nominal. *Rose* v. *Wynn*, 42 Ark. 257.

The trouble in the case at bar is that the plaintiffs brought about their predicament by obtaining an erroneous instruction. At the plaintiffs' request the court gave a charge which told the jury that the parties had agreed that the rental value for one year was $20,000;

316

that if Lammers were found to have been wrongfully evicted the jury in fixing his damages should consider that it was his duty to cultivate as much of the plantation as possible; and that the jury might "deduct the rental that the [plantation] did produce or should have produced from the $20,000, which will establish the damages, if any, Lammers has sustained."

We do not regard this as a correct declaration of law, but upon the theory of this instruction the jury's verdict is unquestionably supported by the evidence. By the unmistakable language of this instruction the jury were given the choice of deducting from $20,000 either what the land "did produce" or what it should have produced. The proof shows that in 1948, 1949, and 1950 the plantation returned only about $4,000 a year to the landlord. Thus the jury were given the privilege of fixing Lammers' principal damages at about $16,000, and the special damages are enough to bring the total up to the amount of the judgment. It is with much reluctance that we affirm this judgment, since we feel that Lammers is being more than compensated for his eviction; but we have held in dozens of cases that a party cannot complain of error in instructions of his own asking. This rule is so well settled and so obviously necessary to the orderly conduct of litigation that we are left with no alternative.

Affirmed.