## NORTHWESTERN NATIONAL CASUALTY
## CO. *v.* Samuel L. MAYS

81-15                                              616 S.W. 2d 734

### Supreme Court of Arkansas
### Opinion delivered May 26, 1981
### [Rehearing denied June 29, 1981.]

*Pickens, Boyce, McLarty & Watson*, by: *James A. McLarty*, for appellant.

*H. David Blair*, for appellee.

FRANK HOLT, Justice. Appellee sued appellant in a direct action to recover damages for personal injuries resulting from an automobile collision between appellant's insured and appellee. The jury returned a verdict for appellee, leaving blank the line on the damages interrogatory where they were to insert a dollar amount if they found for appellee. Instead, beneath the interrogatory, the jury wrote the following:

> $200 per month retroactive to the date of the accident, to be continued for the rest of Samuel's natural life. We also recommend that all medical and legal fees to date be paid in full.

Counsel for appellant requested a poll of the jury to ascertain the dollar amount it intended for appellee to recover. The court refused and offered instead to send the jury back to compute the dollar amount and then fill in that blank portion of the interrogatory. The appellant moved for

a mistrial, asserting that the jury had specified an improper basis for recovery, namely legal fees, and based upon the jury's action, "it is obvious" the jury would adjust its award to include attorneys' fees. The court denied appellant's motion for a mistrial. The court then told the jury that its answer to this interrogatory was not acceptable in its form, the award must be stated in a dollar amount, and pertinent instruction did not include legal fees as to the elements the jury should consider in awarding damages. After further deliberation, the jury returned a unanimous verdict for $25,000. The appellant renewed its motion for a mistrial, which was again overruled.

Appellant contends that the court erred in denying its motions for a mistrial and for a new trial. It argues that since the jury did not follow the law when it awarded attorneys' fees, it would be speculation that the jury did not adjust its subsequent verdict to include attorneys' fees. There is a presumption the jury obeyed the court's instructions. *Jones* v. *Fowler*, 171 Ark. 594, 285 S.W. 363 (1926); and *Bridgforth* v. *Vandiver*, 225 Ark. 702, 284 S.W. 2d 623 (1955). Here, the jury was sent back to deliberate with specific instructions that it could not award attorneys' fees. There is nothing in the record to indicate the jury did not precisely follow the court's instructions during its additional deliberation. The second verdict was in proper form, and the jury exhibited no confusion on their return. The court cured any error by reinstructing the jury and sending them back to deliberate further. This was a correct procedure. *Aetna Life Insurance Co.* v. *Dewberry*, 187 Ark. 278, 59 S.W. 2d 607 (1933).

As to appellant's contention that it was error to refuse to allow it to inquire of the jury, upon its first verdict, the dollar amount it intended for appellee to recover, Ark. Stat. Ann. § 27-1737 (Repl. 1979) permits polling by "asking each juror if it is his verdict." Certainly, the trial court did not abuse its discretion in refusing the inquiry as posed.

Appellant next asserts that the jury erred in the assessment of the amount of recovery. It urges the award is shocking to the conscience in view of the minimal bills, appellee's age (69), and his being fully retired by a former

disability, he sustained no loss of income as a result of the injury. In *Freeman* v. *Jones*, 239 Ark. 1143, 396 S.W. 2d 931 (1965), we stated:

> The responsibility for determining the recoverable damages in an action for personal injuries is primarily and peculiarly a matter for the jury. We are not at liberty to disturb the verdict unless the award is so palpably excessive that it shocks the conscience of the court or indicates that the jurors were motivated by passion or prejudice.

See also *Scheptmann* v. *Thorn*, 272 Ark. 70, 612 S.W. 2d 291 (1981). Here, the appellee, who suffered from arthritis, sustained a fractured right scapula, shoulder blade. There was medical evidence that the appellee sustained a 25 to 50% loss of use of the right arm. The injury, which aggravated his arthritic condition, was of a permanent nature, including the pain he was suffering. There is a "gravel" like sensation when appellee moves his arm up or down. The appellee, himself, testified that whenever he moves his right arm, he has a "grinding feeling." He has difficulty in shaving and combing his hair. When he turns on his right side while sleeping, he is awakened with a "terrible lot of misery." In the circumstances, we cannot say the jury's award is excessive.

The appellant's final point is that the court erred in suppressing a portion of Dr. Dickson's testimony, appellant's witness. His testimony established a discrepancy in the impairment rating of 5% given to appellee by him and the 25-50% disability rating given by Dr. Walker. Counsel had asked the witess the question that, assuming Dr. Walker had intended to use the word "disability" in the same way the witness used the word "impairment," "do I take it that there is a difference between your five percent and his fifty percent in your two opinions?" Counsel for appellee objected that the question was leading and required Dr. Dickson to speculate as to what Dr. Walker meant. The witness was allowed to answer the question, but the trial judge ruled subsequently that portion of the video taped testimony would not be shown to the jury. Appellant argues

there was a factual basis for the hypothetical question, and it was prejudiced by the fact the jury was not allowed to know of Dr. Dickson's disagreement with Dr. Walker. We find no reversible error. The question was a leading one and no attempt was made by counsel to rephrase to cure this error. See Rule 611 (c), Uniform Rules of Evidence. Certainly, the court did not abuse its discretion. Furthermore, there was other evidence presented concerning the disagreement of the two doctors as to the extent of appellee's disability. Dr. Walker testified that appellee had a 25-50% loss of use of his right arm. Dr. Dickson considered appellee had only a 5% impairment. Dr. Dickson also testified that there was some "discussion" as to what the terms meant but that he gave a rating of "physical impairment" rather than of "disability." He did not consider one's occupation or life style in this rating. He stated he did not know what Dr. Walker took into consideration, and he was not in a position to say that they were in strict disagreement. On cross-examination he again testified Dr. Walker's report was given in terms of disability rather than physical impairment, and some doctors draw a fine line between those while others use the terms inter-changeably. It was for the jury to reconcile any disagreement between the two doctors or that they may have used different standards.

Affirmed.