C. Thomas PEARSON, Jr. *v.* Joseph R. HENRICKSON and
Mary Ann Henrickson

98-918                                                   983 S.W.2d 419

Supreme Court of Arkansas
Opinion delivered January 7, 1999

*Pearson Law Firm,* by: *Charles R. Chadwick* and *Christopher F. Woomer,* for appellant.

*Willaim R. Mayo,* for appellees.

ANNABELLE CLINTON IMBER, Justice. This is an appeal from an award of damages to the tenant in an unlawful-detainer action. The trial court ruled that the surrender of the leased premises by the tenant-defendants, the Henricksons, to the landlord-plaintiff, Mr. Pearson, pursuant to a consent order did not preclude the Henricksons from claiming damages for loss of their leasehold interest. The jury returned a verdict in favor of the Henricksons, and awarded them $13,525.00 in damages. Mr. Pearson then filed a motion for a new trial on grounds that the award was excessive, contrary to the law, and against the preponderance of the evidence. The motion was deemed denied pursuant to Ark. R. App. P.—Civ. 4(c). On appeal, Mr. Pearson contends that the trial court erred when it instructed the jury that they could award damages for loss of leasehold interest and when it denied his motion for a new trial. We affirm.

In late 1991, Joseph and Mary Ann Henrickson leased a building from Tom Pearson for the purpose of opening a coffee house and framing gallery. The term of the lease was from October 1, 1991 to September 30, 1994, with the rent initially set at $800.00 per month for the first year, $1,000.00 per month for the second year, and then $1,100.00 per month for the third and final year of the lease. The lease agreement required the Henricksons to make certain substantial repairs to the interior of the building in exchange for a waiver of the deposit and the first three months' rent. The agreement also obligated Mr. Pearson to repair the roof and exterior of the building, and to provide and install air conditioning equipment in "good and operable condition."

Both parties proceeded with the repairs and renovations contemplated in the lease agreement. However, prior to opening the coffee house in February of 1992, the Henricksons experienced problems with the repairs undertaken by Mr. Pearson. Specifically, the roof leaked and the air conditioner failed to work properly. Water ran down the walls of the coffee house and onto the tables and floor, damaging art displayed for sale and prompting complaints by customers. When the summer months arrived, the temperature exceeded 100 degrees for the entire month of July, causing food to spoil. The Henricksons notified Mr. Pearson about these problems. Although there is some dispute as to when

and what repairs were subsequently undertaken, the water and air conditioning problems were never remedied while the Henricksons were tenants.

On June 2, 1993, the Henricksons were served with a notice to vacate, which stated that they were in breach of their lease for failure to pay rent and late charges. The Henricksons refused to vacate, asserting that they were still paying monthly rent and that no late charges had ever been assessed. On July 26, 1993, Mr. Pearson filed a complaint for possession of the premises and for past-due rent and late charges. After the Henricksons were served with the complaint and with an intent to issue a writ of possession, they counterclaimed for damages to foodstuffs, artwork, art supplies, for loss of business income, and for loss of value to their leasehold interest. On September 10, 1993, the parties entered into a consent order, whereby the Henricksons agreed to vacate the premises. The consent order specifically stated that its entry "shall not be reflective as to the ultimate remaining issues of the Plaintiff's Complaint . . . and to the issues contained in the Defendant's Answer and Counterclaim."

At the trial, Ms. Henrickson testified that she and her husband expended over $14,000.00 on repairs to the interior and courtyard of the building. She testified that her framer, who was paying her rent, quit because of the water leaks and the lack of air conditioning. During her testimony, photographs were admitted into evidence that showed the condition of the leased premises both before and after the repairs, along with a videotape that depicted the damage caused by water leaking from the air conditioner and the roof. Ms. Henrickson also testified that they were claiming $600.00 for damaged posters and loss to foodstuffs.

The jury was instructed that the Henricksons were claiming two elements of damage in their counterclaim for wrongful eviction: (1) damage to foodstuffs, artwork, and art supplies; and (2) the loss of value to their leasehold interest. The trial court also instructed the jury that the amount expended by the Henricksons to prepare the leasehold for occupancy was not to be considered as the measure of damages, but that the jury could consider that amount in determining the value of the remaining leasehold inter-

est. The jury returned a verdict in favor of the Henricksons on their counterclaim for wrongful eviction against Mr. Pearson, with an award of $13,525.00 in damages.

Mr. Pearson's first point on appeal is that the trial court erred when it instructed the jury that they could consider loss of leasehold interest as an element of the damages claimed by the Henricksons. Mr. Pearson argues that the Henricksons waived this element of damages by voluntarily surrendering the premises and their leasehold interest. In response, the Henricksons contend that the consent order specifically preserved their claim for loss of leasehold interest and, further, that the leasehold was involuntarily surrendered under threat of legal process. We agree.

The consent order stipulated that its entry would not reflect on the issues "contained in the Defendant's Answer and Counterclaim." In their counterclaim, the Henricksons alleged that Mr. Pearson's actions constituted wrongful eviction, causing damage to their "leasehold interest and the value of their lease." Thus, the consent order was a specific reservation of their right to claim damages to their leasehold interest. Mr. Pearson's argument that the Henricksons waived any right to damages for loss of leasehold interest is clearly not supported by the terms of the consent order. In *Ingram v. Wirt*, 314 Ark. 553, 864 S.W.2d 237 (1993), we defined waiver as:

> [V]oluntary abandonment or surrender by a capable person of a right known by him to exist, with the intent that he shall forever be deprived of its benefits. It may occur when one, with full knowledge of material facts, does something which is inconsistent with the right or his intention to rely upon that right. The relinquishment of the right must be intentional.

(citing *Continental Ins. Cos. v. Stanley*, 263 Ark. 638, 569 S.W.2d 653 (1978)). The Henricksons did not abandon their leasehold rights with the intent to be forever deprived of their benefit. Rather, they specifically reserved those rights according to the express terms of the consent order. We, therefore, conclude that the Henricksons did not waive their right to recover damages for loss of value to their leasehold interest.

Additionally, when a tenant surrenders a premises under the threat of legal process already issued, that surrender will not be considered voluntary. *See Woods v. Kirby,* 238 Ark. 382, 382 S.W.2d 4 (1964); *Fleming v. Cooper,* 224 Ark. 10, 271 S.W.2d 772 (1954). Here, the Henricksons agreed to the consent order in the face of imminent eviction and a pending lawsuit. They were served with a notice to vacate, a complaint for possession, and an intent to issue a writ of possession. The only action remaining was actual eviction by the sheriff. Under these circumstances, we conclude that the Henrickson's surrender of the premises was not voluntary.

Mr. Pearson suggests that our holding in *Woods* requires service of the actual writ of possession on a tenant before surrender of the premises will be considered involuntary, and further argues that, to the extent the *Fleming* decision is inconsistent with that proposition, it should be overruled. We do not agree that *Woods* imposes such a specific requirement. Both *Woods* and *Fleming* are consistent in holding that *any* threat of legal process *served* on a tenant is sufficient to indicate that a subsequent surrender of the premises is involuntary. Thus, we find no merit in Mr. Pearson's argument that our decision in *Fleming* should be overruled. For the above reasons, we conclude that the trial court properly instructed the jury to consider loss of leasehold interest as an element of damages.

Mr. Pearson next argues that the trial court improperly denied his motion for a new trial, wherein he contended that the damages awarded by the jury were excessive and against the preponderance of the evidence. The Henricksons assert that Mr. Pearson's arguments are equivalent to a challenge to the sufficiency of the evidence and are not properly preserved for appeal as he did not make a motion for directed verdict below. However, our rules of civil procedure clearly allow a motion for new trial to be made on the grounds asserted by Mr. Pearson, and no motion testing the sufficiency of the evidence is required as a prerequisite to making a motion for a new trial on these grounds. *See* Ark. R. Civ. P. 59(c); *see also Yeager v. Roberts,* 288 Ark. 156, 702 S.W.2d 793 (1986). Thus, Mr. Pearson properly preserved his arguments on appeal by filing a motion for a new trial.

■ ■ On appellate review of a trial court's denial of a motion for new trial, the standard of review depends upon whether the appellant seeks to set aside the jury's verdict on the issue of liability or on damages. Where the verdict involves the issue of liability, we apply a "substantial evidence" standard of review. *See Harper v. Clark Equip. Co.*, 300 Ark. 413, 779 S.W.2d 175 (1989). However, when the issue appealed is primarily one of damages, we reverse a denial of a motion for a new trial only if the judge's ruling was a clear and manifest abuse of discretion. *Depew v. Jackson*, 330 Ark. 733, 957 S.W.2d 177 (1997); *Harper, supra.* In this appeal, Mr. Pearson challenges the jury's verdict on damages. Therefore, the proper standard of review is whether there has been a clear and manifest abuse of discretion by the trial court.

Mr. Pearson asserts that the Henricksons presented no evidence to establish the value of their loss of leasehold interest. He argues that the evidence only supported an award of $600.00, or the value of the damaged artwork and foodstuffs, and he asks this court to reduce the jury's award to that amount. According to Mr. Pearson, any amount in excess of $600.00 is based on speculation. The Henricksons insist that the testimony introduced at trial supports the jury's verdict. They also assert that because the jury rendered a general verdict, there is no way to ascertain what amount the jury awarded for each element of damages. We agree.

■ ■ In evaluating loss of value to a leasehold interest, the correct measure of damages is the amount by which the fair market value of the lease exceeds the agreed-upon rent. *Ark. State Highway Comm'n v. Humble*, 248 Ark. 685, 453 S.W.2d 408 (1970); *Ark. State Hwy. Comm'n. v. McHaney*, 234 Ark. 817, 354 S.W.2d 738 (1962); *The Home Company v. Lammers*, 221 Ark. 311, 254 S.W.2d 65 (1952). Mr. Pearson argues that no testimony or direct evidence was introduced to establish any increase in rental value over and above what the Henricksons were paying in rent. However, we have previously held that it is not essential to evaluate the leasehold in exactly that manner in order to recover damages for a loss of leasehold interest. *Humble, supra.* With regard to leasehold improvements, we have held that "the value of fixtures lost because incapable of removal [may] sometimes [be] admitted, not as proving specific items of damage, but as a means of

showing the value of the unexpired term." *Humble, supra.* There-
fore, the value of improvements may be considered in determining
the value of the remaining leasehold interest.

The testimony in this case established that the
Henricksons spent $14,544.00 for improvements to the leased
building. Ms. Henrickson testified that $7,662.46 was spent mak-
ing improvements to the interior of the building. An additional
$6,882.08 was spent constructing a patio area and fishpool in the
courtyard behind the building. Ms. Henrickson testified that
these figures represent only the cost of materials, and do not
include any estimate for the value of labor expended in making
those improvements. Her testimony also established the amount
of rent being charged, the one-year term remaining on the lease at
the time the premises was surrendered, and the lost rental income
as a result of losing their framer. The photographs and videotape
illustrated the rental property's appearance both before and after
renovation and the extent of the damage to the improvements.
We conclude that this evidence is a competent basis for the jury's
verdict when the ultimate issue was the value of the unexpired
lease. *See Humble, supra.*

We further note that the trial court properly
instructed the jury to consider this evidence, not as measure of
damages, but in determining the value of the remaining leasehold
interest. Absent evidence to the contrary, there is a presumption
that the jury has obeyed its instructions. *Northwestern Nat'l. Cas.
Co. v. Mays,* 273 Ark. 16, 616 S.W.2d 734 (1981). Nor should
we speculate as to the basis for a jury's verdict. *Esry v. Carden,* 328
Ark. 153, 942 S.W.2d 843 (1997). Because the verdict was ren-
dered on a general verdict form, it is an indivisible entity. *Avery v.
Ward,* 326 Ark. 829, 934 S.W.2d 516 (1996); *Lammers, supra.* We
cannot therefore sustain Mr. Pearson's argument and attempt to
divine exactly how the jury arrived at its verdict.

Finally, Mr. Pearson asserts that the award of
$13,525.00 is excessive in light of the evidence presented at trial.
When an award of damages is alleged on appeal to be excessive,
we review the proof and all reasonable inferences most favorably to
the appellee and determine whether the verdict is so great as to

shock our conscience or demonstrate passion or prejudice on the part of the jury. *United Ins. Co. of America v. Murphy,* 331 Ark. 364, 961 S.W.2d 752 (1998); *Builder's Transp., Inc. v. Wilson,* 323 Ark. 327, 914 S.W.2d 742 (1996). Construing all reasonable inferences in favor of the Henricksons, we do not find the amount of the verdict to be so great as to shock our conscience. Nor does the verdict demonstrate passion or prejudice on the part of the jury. We, therefore, hold that the trial court's denial of Mr. Pearson's motion for a new trial is not a clear and manifest abuse of discretion.

Affirmed.

SMITH, J., not participating.