Bob E. FEWELL and Holdingsco, Inc. *v.*
Mike PICKENS, Receiver of
American Investors Life Insurance Company

00-1279 & 00-1272                                  39 S.W.3d 447

Supreme Court of Arkansas
Opinion delivered April 5, 2001
[Petition for rehearing denied May 3, 2001.]

*Perroni & James Law Firm,* by: *Samuel A. Perroni* and *Patrick R. James,* for appellants.

*Friday, Eldredge & Clark,* by: *William A. Waddell, Jr.,* for appellee.

ROBERT L. BROWN, Justice. The appellants in this case, Bob E. Fewell and Holdingsco, Inc., appeal from an order by the Pulaski County Circuit Court appointing a receiver for American Investors Life Insurance Company (American Investors) and enjoining the appellants from transacting business for the company. They further appeal from an order denying their motion to vacate the appointment of the receiver and the injunction and from an order denying their motion to strike an affidavit of service. The appellee in this case is Mike Pickens, who is the Arkansas Insurance Commissioner and who was appointed receiver for American Investors. Fewell and Holdingsco raise multiple points in this appeal in which they contend that the circuit court erred in its various

orders. We hold that the issues raised are without merit, and we affirm.

American Investors is a life insurance company domiciled in Arkansas. Its parent company is Holdingsco, although Fewell owns a fractional interest in the company. Fewell is the owner of Holdingsco. In 1999, following a review of American Investors's financial solvency, Pickens found a $2,935,000 capital surplus deficiency in the company.[1] As a result, on May 28, 1999, the Arkansas Insurance Department, American Investors, Holdingsco, and Fewell entered into an Agreement to cure the deficiency. The purpose of the Agreement was to enable American Investors to be considered solvent as of December 31, 1998. The Agreement provided that in consideration of the Insurance Department's forbearance in putting American Investors into receivership, American Investors, Holdingsco, and Fewell would make up the $2,935,000 capital surplus deficiency with deposits and promissory notes. The Agreement also contained a personal guaranty by Fewell that American Investors would meet the minimum capital surplus requirement of $115,000 as of December 31, 1999. The Agreement further provided that upon the breach of any of its covenants, American Investors, Holdingsco, and Fewell consented to the immediate commencement of receivership proceedings, the entry of an order granting receivership, and waiver of prior notice to the entry of such an order.

On December 30, 1999, the same parties entered into a First Amended and Substituted Agreement. Under the First Amended Agreement, Fewell executed a promissory note dated the same day in the amount of $1,407,802.63, which was payable in full to American Investors on or before June 30, 2000. Additionally, Fewell reaffirmed his personal guaranty that American Investors would meet the minimum capital surplus requirement of $115,000 as of December 31, 1999. The First Amended Agreement included a provision that unless modified therein, all other portions of the prior, original agreement remained in effect and "[were] hereby ratified, and incorporated herein by reference."

The First Amended Agreement also contained a provision that Fewell's ultimate liability under the $1,407,802.63 promissory note and his personal liability for American Investors's operations ending December 30, 1999, might be adjusted downward following the

---

[1] This figure was determined as a result of operations ending December 31, 1998.

calculation of the "1999 Reserve True-Up," which would determine the amount needed to pay incurred claims for 1999. Reserves on hand for 1999 claims totaled $7,713,920. A "Review of Claims Reserves for American Investors Life Insurance Company" was issued on June 28, 2000 by a consulting actuary, Martin F. Gibson. The Gibson Review calculated the total claims reserve for American Investors as of December 31, 1999, at $12,183,000, which exceeded the $7,713,920 figure by over $4 million. Correspondence between the parties followed, and Fewell failed to pay the amount owed under his promissory note by June 30, 2000. As a result, on July 11, 2000, Pickens, as Insurance Commissioner, commenced receivership proceedings against American Investors pursuant to the Uniform Insurers Liquidation Act, Ark. Code Ann. § 23-68-101 through 132 (Repl. 1994, Supp. 1999) (Uniform Act), by filing a petition for the appointment of receiver and injunctive relief.

On that same day, a hearing was held before the Pulaski County Circuit Court. At its conclusion, the court entered an order entitled Permanent Injunction and Order Appointing Receiver for Rehabilitation. On July 31, 2000, Fewell and Holdingsco moved to intervene in the action. On August 4, 2000, a hearing was held before the circuit court and appellants' intervention motion was granted. The appellants also moved at this hearing that the order of receivership and the injunction be set aside and dismissed. The circuit court denied appellants' petition. This appeal followed.

## I. Motion to Dismiss

As a preliminary matter, we consider Pickens's motion to dismiss, which is based on his allegation that the record in this appeal was untimely filed. On November 3, 2000, Pickens filed his motion to dismiss which was submitted with this case for resolution. In it, he urges that the Permanent Injunction and Order Appointing Receiver for Rehabilitation issued by the circuit court on July 11, 2000, "was an interlocutory order within the meaning of Rules 2(a)(6), 2(a)(7), and 5(a) of the Arkansas Rules of Appellate Procedure—Civil." Thus, he maintains that Fewell and Holdingsco were required to lodge the record on appeal within thirty days of the order's entry pursuant to Ark. R. App. P.—Civ. 5(a). This, he contends, the appellants failed to do. Furthermore, Pickens asserts that the order establishing the "permanent" injunction and receivership clearly contemplated additional actions by the circuit court and, thus, was interlocutory.

██ We disagree with Pickens's characterization of the July 11, 2000 order in this case. The Uniform Act has this to say about the finality of orders:

> An appeal shall lie to the Supreme Court from an order granting or refusing rehabilitation, liquidation, or conservation, and from every other order in delinquency proceedings having the character of a final order as to the particular portion of the proceedings embraced therein.

Ark. Code Ann. § 23-68-103(d) (Supp. 1999). There are two aspects of § 23-68-103(d), which we believe are important. First, the section contemplates more than one final order in delinquency proceedings. Second, the order in question in this case is entitled *Permanent* Injunction and Order Appointing Receiver for Rehabilitation. We have no doubt that over the course of the delinquency proceedings, other orders might be entered by the circuit court which touch and concern this order. But on its face, the character of the order appointing the receiver and providing *permanent* relief is clearly that of finality. The motion to dismiss is denied.

## II. Standing

Pickens further raises the question of the appellants' standing to appeal.[2] He advances the argument that they are non-parties to the order of receivership and injunction and, thus, should be precluded from taking this appeal unless pecuniarily affected. *See In the Matter of Allen*, 304 Ark. 222, 800 S.W.2d 715 (1990). Far from being pecuniarily affected, Pickens contends that any claim for relief by the appellants merely derives from the rights of American Investors.

██ We disagree with Pickens on this question. Holdingsco is the parent company of American Investors, and Fewell is the owner of Holdingsco. The pecuniary interest of the appellants is real and considerable. We conclude that the appellants have a pecuniary interest affected by the circuit judge's action and, thus, have standing to bring this appeal. *See In the Matter of $3,166,199*, 337 Ark. 74, 987 S.W.2d 663 (1999); *In the Matter of Allen, supra*.

---

[2] The standing issue was also raised in Pickens's Reply to the Appellants' Response to the Motion to Dismiss Appeal. The appellants moved to strike the Reply because it raised a new issue to which the appellants had no opportunity to respond. We need not decide the appropriateness of the Motion to Strike because the standing issue was raised in Pickens's brief on appeal, and the appellants responded to it in their Reply Brief.

### III. Validity of Permanent Injunction and Receivership Order

Fewell and Holdingsco mount four arguments contesting the validity of the Permanent Injunction and Order Appointing Receivership for Rehabilitation: (1) the order was invalid without a 1999 True Up Calculation; (2) the order was entered *ex parte* and violated their rights to due process; (3) Pickens did not follow the mandatory procedures of the Uniform Act; and (4) the circuit court erred in denying their motion to set aside the permanent injunction and receivership order.

a. Absence of True Up Calculation

The appellants' initial argument is that there was no 1999 True Up Calculation done, as required by the First Amended Agreement. Hence, they claim that Fewell's obligation to pay the $1,407,802.63 promissory note by June 30, 2000, was never triggered because the extent of incurred claims for 1999 was never actually calculated. Their argument continues that because the promissory note was not due and payable as of June 30, 2000, due to the lack of a True Up calculation, there was no breach of the Agreement and no consent to an *immediate* receivership.

We consider two provisions of the 1999 agreements entered into between the Arkansas Insurance Department, American Investors, Fewell, and Holdingsco to be critical. The first is the consent provision in the May 28, 1999 Agreement:

> However, upon breach of any one of the aforesaid covenants, the Company, the Parent and Fewell hereby agree and consent to the immediate commencement and entry of an order granting receivership against the Company by the Department under Ark. Code Ann. § 23-68-101 through § 23-68-132 and waive prior notice of entry of an order of permanent receivership.

The second provision is in the First Amended Agreement entered into on December 30, 1999:

> (b) The amounts due under the terms of the One Million Four Hundred Seven Thousand Eight Hundred Two Dollars and Sixty Three Cents ($1,407,802.63) Promissory Note, as provided for in subparagraph 2(a)(3) above, and attached hereto as Exhibit "H," *may* be adjusted as follows:

(i)  by reducing the principal amount due in an amount equal to the difference between the actual amount of claims reserves utilized to pay all just and valid claims incurred by the Company in 1999 and the claim reserve of Seven Million Seven Hundred Thirteen Thousand Nine Hundred Twenty Dollars ($7,713,920.00) posted by the Company on December 30, 1999 for 1999 incurred claims. This difference in reserve amount, if any, shall be calculated on or before June 30, 2000 ("1999 Reserve True Up")[.]

Pickens first argues that American Investors was impaired in early 1999 and that the initial Agreement dated May 28, 1999, was an effort by the affected parties to cure the capital surplus deficiency with promised deposits and promissory notes. Failing that, American Investors consented to an immediate receivership and waived all notice. Apparently, there was some misunderstanding about the Agreement, and the First Amended Agreement represented additional forbearance by the Insurance Department if additional capital was provided to meet incurred claims for 1999. Part of that additional capital was in the form of Fewell's promissory note in the amount of $1,407,802.63, due and payable to American Investors on June 30, 2000. The only potential for reducing that obligation was if the 1999 claims did not exceed the claim reserve of $7,713,920.

█ It is clear to this court that the 1999 incurred claims did exceed $7,713,920 based on an actuarial report prepared by consulting actuary Martin F. Gibson, which showed the needed claims reserves to be $12,183,000. This report was dated June 28, 2000, and was furnished to American Investors. In addition, the circuit court considered the True Up issue at the hearing on August 4, 2000. There was no recording or transcription of the hearing on that date, but Statements of Proceedings were prepared by both counsel for Fewell and Holdingsco and counsel for Pickens. First, there is the Statement by counsel for Fewell and Holdingsco:

3. Intervenors also argued that there was no basis for the entry of a permanent injunction since the Arkansas Insurance Department failed to conduct a "True-Up" i.e., the actual calculation, which was the basis for the alleged consent to the receivership.

4. Steve Uhrynowycz, counsel for the Petitioner, represented to the Court that a definite True-Up number was provided to American Investors Life Insurance Company on June 23, 2000, and that there was no breach of the agreement.

4. [*sic*] Counsel for the Petitioner contended that there was no basis to set aside the permanent injunction and opposed the relief requested by Intervenors.

5. After considering the arguments of counsel the Court denied the Motion to Dismiss and to Set Aside the Injunction.

Next, there is the Statement by Pickens's counsel of what transpired:

3. Intervenor also argued that there was no basis for the entry of a permanent injunction because the figure in the actuarial report attached to the Petition for Appointment of Receiver was an estimate.

4. Steve Uhrynowycz, one of the counsel for Petitioner argued in response that a true-up number was provided to American Investors Life Insurance Company and that the true-up number was contained in the pleadings. Uhrynowycz further argued Intervenors argument failed to address the outstanding $1.4 million promissory note owed to American Investors Life Insurance Company.

5. After considering the arguments of counsel, the Court denied the Motion to Dismiss and to Set Aside the Injunction.[3]

Based on these Statements, which reconstruct the events at the August 4, 2000 hearing, the appellants made their True Up argument to the circuit court in support of their motion to dismiss the receiver and set aside the permanent injunction, and their motion was denied. We agree with Pickens that the circuit judge considered the True Up argument of the appellants and rejected it.

■ Furthermore, a letter from the Insurance Department dated June 30, 2000, to counsel for appellants made it clear that Fewell's promissory note was due. This letter was Exhibit A to Pickens's petition for receivership and stated in part:

While I recognize you have only recently been retained to represent Mr. Fewell, Mr. Fewell and his previous counsel have been well aware of this obligation for six (6) months. As soon as the company paid out greater than $7.7 Million in 1999 incurred

---

[3] The circuit court adopted this Statement of the proceedings.

claims, management and, we trust ownership, knew the entire $1.4 Million obligation was payable in full. As evidenced by the Milliman & Robertson/Rex Durrington report dated June 15, 2000, which was communicated to the Company on June 16, 2000 and handed to the Company's President, Randy Coleman, on June 19, 2000, the Company had previously paid out $9.9 Million in 1999 incurred claims.

The True Up calculation was a benefit to Fewell and a means to reduce his liability under his promissory note should the 1999 claims not exceed the $7.7 million claims reserve. It is obvious that the claims had exceeded this amount by June 30, 2000, and that the appellants were aware of this. Nevertheless, Fewell and Hollingsco, who at that time still controlled American Investors, took no steps to refute the calculations made by the consulting actuary or contained in the Milliman & Robertson/Rex Durrington report. We hold that the circuit judge correctly found that a breach of the 1999 Agreements occurred.

b.   *Ex parte* Order and Mandatory Statutory Procedures

▮ The appellants next contend that the circuit judge deprived them of their due process rights by entering the receivership order and injunction *ex parte*. We disagree. As an initial matter, Pickens argues that a due process claim was never made by the appellants. The appellants did, however, urge in their motion to set aside the permanent injunction that their property was being taken without a chance to be heard. That is enough to raise the issue in our judgment.

▮ The Uniform Act discusses delinquency proceedings generally and provides that the Pulaski County Circuit Court shall have original jurisdiction over delinquency proceedings pursuant to the chapter. *See* Ark. Code Ann. § 23-68-103(a) (Supp. 1999). Moreover, the Uniform Act provides that "[d]elinquency proceedings pursuant to this chapter shall constitute the *sole and exclusive* method of liquidating, rehabilitating, reorganizing, or conserving an insurer[.]" Ark. Code Ann. § 23-68-103(c) (Supp. 1999) (emphasis added). Accordingly, in order for the Insurance Commissioner to achieve his appointment as receiver of American Investors, and the granting of an injunction against the company, he was required to follow the procedures outlined in the Uniform Act. We initially conclude that the Uniform Act establishes a special statutory proceeding for receivership matters and associated injunctions and, as a consequence, the proceedings involved in this matter which are

fixed by statute are not controlled by the Arkansas Rules of Civil Procedure. *See* Ark. R. Civ. P. 81(a).

Fewell and Holdingsco rely heavily on allegations that Pickens did not comply with the strict terms of § 23-68-104 of the Uniform Act, which provides:

> The commissioner shall commence any such [receivership] proceedings by application to the court for an order directing the insurer to show cause why the commissioner should not have the relief prayed for. On the return of such order to show cause, and after a full hearing, the court shall either deny the application or grant the application, together with such other relief as the nature of the case and the interests of the policyholders, creditors, stockholders, members, subscribers, or the public may require.

Ark. Code Ann. § 23-68-104 (Repl. 1994). The statute clearly contemplates, according to the appellants, that in order for Pickens to begin the delinquency proceedings, he must apply to the Pulaski County Circuit Court for an order directing American Investors to show cause. This was not done, they claim. Nor was a "full hearing" held, as required by § 23-68-104.

Pickens's retort is that Fewell and Holdingsco consented to the immediate entry of a receivership order in the event of a breach of the May 28, 1999 Agreement. Again, that Agreement contained this language:

> However, upon breach of any one of the aforesaid covenants, the Company, the Parent and Fewell hereby agree and consent to the immediate commencement and entry of an order granting receivership against the Company by the Department under Ark. Code Ann. § 23-68-101 through § 23-68-132 and waive prior notice of entry of an order of permanent receivership.

Because Fewell breached the Agreement by not paying the promissory note by June 30, 2000, Pickens maintains that he was perfectly within his rights to ask for an immediate receivership and that the circuit judge had full authority to grant one *ex parte*. Pickens emphasizes that he had worked with the appellants to resolve American Investors capital surplus deficiencies for more than a year, that the deficiencies had not been resolved, and that the increased risk to the policyholders was great.

■ In light of the language contained in the 1999 Agreements between the parties, we conclude that the statutory requirements of § 23-68-104 do not control in this case. It is true that § 23-68-104 contemplates the commissioner's petition for an order to show cause and a full hearing before granting that petition. But Fewell and Holdingsco waived those statutory requirements under the Uniform Act by consenting to an *immediate* receivership in the event of breach without prior notice. The standard definition of waiver is the voluntary abandonment or surrender by a capable person of a right known by him to exist, with the intent that he will forever be deprived of its benefits. *Pearson v. Henrickson*, 336 Ark. 12, 983 S.W.2d 419 (1999) (citing *Continental Ins. Cos. v. Stanley*, 263 Ark. 638, 569 S.W.2d 653 (1978)); *Smith v. Walt Bennett Ford, Inc.*, 314 Ark. 591, 864 S.W.2d 817 (1993). Fewell and Holdingsco clearly agreed in 1999 to waiver of their statutory rights under § 23-68-104, if Pickens would forbear placing them into receivership at that time.

■ The circuit court found that the appellants had consented to the entry of an order of receivership without prior notice. We agree with the court's finding and hold that Fewell and Holdingsco waived their rights under § 23-68-104 by executing the 1999 Agreements. We hold, in addition, that the immediate entry of a receivership order on July 11, 2000, with the permanent injunction, albeit entered *ex parte*, did not violate due process protections. We further note that on August 4, 2000, the appellants did have the opportunity to be heard on the circuit judge's order. Indeed, at that time they made their argument to the judge concerning the alleged lack of a 1999 True Up Calculation and moved that the July 11, 2000 order be set aside. This request was denied. The August 4, 2000 hearing, in our view, provided the appellants with an opportunity to be heard on the legitimacy of the receivership order.

c. Permanent Injunction

■ The same holds true for the permanent injunction issued as part of the July 11, 2000 order. The Uniform Act provides:

(1) Upon application by the commissioner for such an order to show cause, or at any time thereafter, the court may *without notice* issue an injunction restraining the insurer, its officers, directors, stockholders, members, subscribers, agents, and all other persons from the transaction of its business or the waste or disposition of its property until the further order of the court.

Ark. Code Ann. § 23-68-105(1) (Repl. 1994) (emphasis added). Because the appellants waived the statutory requirement under § 23-68-104 for a show-cause order, the circuit judge could at any time issue the injunction restricting the transaction of business *without notice.*

▉ Fewell and Holdingsco urge that the injunction was invalid because there was no showing of irreparable harm and no showing of the likelihood of success on the merits as required under our common law and Ark. R. Civ. P. 65. The short answer to this point, as already stated in this opinion, is that the Uniform Act is a special statutory proceeding and applies rather than the Rules of Civil Procedure. *See* Ark. R. Civ. P. 81(a). Hence, § 23-68-105(1) applies and controls the grounds for issuing an injunction in delinquency proceedings.

### IV. Subject-Matter Jurisdiction

The appellants further claim that the circuit judge lacked subject-matter jurisdiction to issue an injunction in this matter. They claim that injunctive relief rests solely with courts of equity. Pickens responds that § 23-68-103 of the Uniform Act invests original jurisdiction over these delinquency proceedings in the Circuit Court of Pulaski County. He directs our attention to § 23-68-105, which specifically endows the circuit court with the authority to issue injunctions to halt the transaction of business by impaired insurance companies. The appellants reply that § 23-68-105 is unconstitutional under the Arkansas Constitution because it is at odds with the fact that equitable remedies have historically fallen within the bailiwick of chancery courts. Pickens counters that the appellants did not raise the constitutional argument before the circuit judge.

▉ We agree with Pickens that the issue of the constitutionality of § 23-68-105 is raised for the first time on appeal. Accordingly, we will not consider it. *Jacobs v. Yates,* 342 Ark. 243, 27 S.W.3d 734 (2000); *SEECO, Inc. v. Hayes,* 341 Ark. 972, 22 S.W.3d 157 (2000).

▉ With respect to subject-matter jurisdiction, we have already remarked in this opinion that the Uniform Act establishes a special statutory proceeding, which includes the injunctive relief under § 23-68-105. Our caselaw makes this abundantly clear. *See Bullion v. Pope,* 192 Ark. 959, 96 S.W.2d 465 (1936); *Franklin v.*

*Mann*, 185 Ark. 993, 50 S.W.2d 606 (1932). The General Assembly has endorsed this statutory scheme and invested the circuit courts with the power to issue injunctions under these limited circumstances. We hold that the Pulaski County Circuit Court has subject-matter jurisdiction to issue injunctions in delinquency proceedings under the Uniform Act.

*V. Motion to Strike Affidavit of Service*

On August 8, 2000, the appellants moved to strike an affidavit of service filed on August 3, 2000, by Steve Uhrynowycz, counsel for Pickens. The affidavit stated that Uhrynowycz had hand-delivered a copy of the Petition for the Appointment of Receiver and the Permanent Injunction and Order Appointing Receiver for Rehabilitation to officers of American Investors on July 11, 2000. The motion to strike asserted that the affidavit did not indicate that American Investors was served with a summons or that Uhrynowycz was authorized to effect service of process as required by Ark. R. Civ. P. 4. The circuit judge denied the motion to strike for the reasons stated in Pickens's response.

We agree with the circuit judge and Pickens that the motion to strike has no merit. The appellants consented to the immediate entry of a receivership order and waived notice of that order in the 1999 Agreements. As a result, there was no requirement that any service be perfected on American Investors or even that notice be given. After Pickens presented his petition on July 11, 2000, the circuit judge made a finding to that effect in his order:

> 3. In support thereof, the Court finds that Petitioner has made a *prima facie* case that Respondent's financial condition is impaired such that its continued operation outside the supervision of Petitioner will be hazardous to the general public, and to Respondent's insureds and creditors. The Court further finds that Respondent has consented to the entry of an order of permanent receivership without prior notice upon breach of covenants contained in May 28, 1999 Agreement and December 30, 1999 First Amended and Substituted Agreement, and that Petitioner has made a *prima facie* case of such breach of covenants.

We cannot say this finding is clearly erroneous.

Affirmed.

ARNOLD, C.J., CORBIN and THORNTON, JJ., dissent.

DONALD L. CORBIN, Justice, dissenting. I dissent from the majority's conclusion that Appellants waived their rights to notice and a full hearing based on an alleged breach of their agreement with Appellee Insurance Commissioner. I am troubled by the majority's conclusion that the Commissioner was not required to comply with the mandatory requirements of Ark. Code Ann. § 23-68-104 (Repl. 1994), despite the fact that the Uniform Act provides the "*sole and exclusive method* of liquidating, rehabilitating, reorganizing, or conserving an insurer[.]" *See* Ark. Code Ann. § 23-68-103(c) (Supp. 1999) (emphasis added). The Act plainly contemplates that a full hearing will be held before the trial court may grant the relief sought by the Commissioner in the delinquency proceedings. The reason for a full hearing is unmistakably to enable the trial court to make a learned ruling based on all the facts.

Receivership of an insurance company has far-reaching effects, beyond those felt by the company's owners and directors. It has very real effects on the policyholders and any other persons who may have claims against the insurance company. Their interests must be protected. Section 23-68-104 advises the trial court to consider the interests of "the policyholders, creditors, stockholders, members, subscribers," as well as the interests of the public, in granting or denying the appointment of a receiver. How the trial court can consider those interests without the benefit of a full hearing prior to the appointment of a receiver is beyond me. Given the other interests at stake, I do not believe that the Commissioner may skirt the notice requirements contained in the Uniform Act based solely on what he claims is a waiver of notice by the owners of the insurance company.

More significantly, I do not read the agreements between the Commissioner and Appellants as giving the Commissioner unilateral authority to determine when a breach of the agreements has occurred. That should have been an issue for the trial court to determine, after hearing evidence from both sides. The trial court's determination that there was a prima facie breach of the agreement is of little or no value, as it was made *ex parte*. Moreover, I disagree with the majority that the "hearing" held on August 4, 2000, after the trial court had already made its *ex parte* ruling, was sufficient for purposes of due process. Appellants undoubtedly had a higher mountain to climb in attempting to convince the trial court that it had erred in making the initial determination that a breach had

occurred. Furthermore, the "hearing" granted after the fact was, in reality, no hearing at all; no court reporter was present, and no evidence was heard.

Additionally, I disagree with the majority that the waiver contained in the agreements sufficed to allow the trial court to issue a permanent injunction and restraining order without notice to Appellants. Arkansas Code Annotated § 23-68-105 (Repl. 1994) only allows the trial court to issue an injunction or restraining order without prior notice to the insurer if the Commissioner has first sought a show-cause order. That was not done here.

It is evident from the steps statutorily required that the act of placing a corporation into receivership is serious business. The Commissioner is required to commence a receivership by applying to the trial court for an order directing the insurer to show cause why the receivership should not be granted. A "full hearing" must then be held, during which the trial court is to consider the interests of all potential affected parties, as well as the public. *See* section 23-68-104. Only after a full hearing may a receivership be granted. At a minimum, the statutory scheme contemplates that interested parties will be given an opportunity to be heard before a receiver is appointed and a permanent order is entered.

Under the facts of this case, even if it can be said that Appellants waived their statutory rights to notice, at a minimum, they should have been provided with notice to be heard on the issue of whether the agreement had, in fact, been breached. Constitutional notions of due process require at least that much. It stretches credulity to envision the Commissioner having such complete unchallengeable authority that he not only can avoid the notice requirements of the statutes, but that he can be judge and jury on the issue of whether a breach has occurred.

Finally, what is most troubling to me are the far-reaching effects this decision will have. I fear that the agreements employed by the Commissioner in this case will be used as a template to place other insurance companies into receivership. This "procedure" offends public policy and the very reasons behind the passage of the Uniform Act. As explained above, the Act clearly spells out the steps that the Commissioner must take before an insurer may be placed into receivership. The requirements are straightforward and simple, and, more importantly, they are the sole and exclusive means to place an insurer into receivership. It was thus error for the

trial court to require anything less than compliance with the statutes.

ARNOLD, C.J., and THORNTON, J., join in this dissent.