2012 Ark. App. 343

**D & D PARKS CONSTRUCTION COMPANY, INC., Appellant**

v.

**Charles MARTIN and Lauri Martin, Appellees.**

No. CA 11–1150.

Court of Appeals of Arkansas.

May 16, 2012.

Benjamin A. Gibson, Yellville, for Appellant.

Jodi G. Carney, Carney Law Firm, Mountain Home, for Appellant.

ROBERT J. GLADWIN, Judge.

Appellant D & D Parks Construction Company, Inc. (D & D) contends that the Baxter County Circuit Court erred by finding in favor of appellees Charles and Laura Martin in its judgment filed May 5, 2011, by: (1) denying the motion to dismiss the complaint for failure to attach the contract as an exhibit; (2) finding liability on D & D's part; and (3) awarding excessive damages to the Martins. We affirm.

The Martins filed a complaint against D & D on August 7, 2008, alleging that the parties had entered into a contract for D & D to construct a custom house for the Martins in Mountain Home, Arkansas. The Martins alleged that D & D completed the house in a less-than-workman-like manner, was negligent in supervising and constructing the house, and caused the house to suffer from serious defects, including cracked Sheetrock and brick, dropped ceilings, insufficient framing and bracing, and improperly-designed and -installed rafters. The Martins sought judgment against D & D to cover repairs and relocation during repairs.

On August 18, 2008, D & D filed a general answer denying the Martins' allegations. On December 7, 2010, minutes before the hearing, D & D filed a motion to dismiss pursuant to Arkansas Rule of Civil Procedure 10(d) (2010), claiming that the Martins failed to attach a copy of the contract to their complaint. The trial court denied the motion after hearing the Martins' argument that D & D had written the contract and that the contract was not attached to the complaint because it was not readily available, as much time had passed between the house being built and the time the lawsuit was filed. The contract is included in the record as Plaintiff's Exhibit 11.

At the hearing, Ben Strider, a licensed civil engineer, testified that he inspected the house at issue and did not feel that the house was structurally sound. Upon inspection of the house, he found that, above the garage, an attic truss was displaced, which caused the garage ceiling to fail. The Martins had installed a support beneath the ceiling to keep it from falling any more than the six inches it had already fallen. Strider testified further that the roof rafters were on twenty-four-inch centers, spanning an area too wide for the lumber used according to the International Residential Code. Strider said that the same thing applied to the area above the kitchen/living room. He testified that there was nothing holding the two exterior walls together and that there was sagging on the ridge line over the kitchen/living room. He gave the Martins three options for fixing the roof structure. Option one was to replace the entire roof structure. Option two consisted of leaving the roof structure and "shirring it up" from within the house. Option three would involve stabilizing the roof structure and pushing on the walls, but lowering the ceiling in the kitchen/living room.

Steven Mark Esposito, owner of Quality Concept Homes and Exterior Specialties, Inc., testified that he estimated that the first option would cost $106,585, with a contingency of $10,237.50 for the repair of any brick work. He estimated that option two would cost $108,000. He did not prepare an estimate for option three.

Charles Martin testified that he used a two-by-twelve-inch beam to push the fallen area of the garage ceiling back up and contacted D & D. After he noticed an attic truss had fallen, a roof rafter that had nails pulled out or cracked, cracks in the kitchen/living room, and a half wall that

separated from the exterior wall, Martin hired Vern Nelson, an engineer, to inspect the house. Martin anticipated that it would cost $3,793 to move his personal belongings while the house is being repaired and $1300 per month to rent a house during the repairs to his house. Martin also testified that he received a bid of $1022 for carpet removal and reinstallation. Martin said that he did not find option three suitable because it would lower the ceiling.

During cross examination, Martin admitted that he did not have anyone inspect his house for damage following the most recent ice storm. He claimed that he was never contacted by D & D after he complained about the garage ceiling. He admitted to receiving lower bids for the repair work, but claimed that he did not want to use those contractors because the engineer's recommendations would not be followed by them.

Duffy Chevallier, a house framer, testified that he inspected the house and noticed that there were no posts in the basement. He said that the lack of posts would not affect the garage, but would affect the kitchen/living room. He submitted a bid for option three in the amount of $19,600, but testified that he did not think the work was necessary.

David Parks, owner of D & D, testified that the parties had a cost-plus contract to build the house and he finished the house in September or October 2003. He explained that he inspected the garage ceiling in 2008 and told the Martins he would return in the fall when it was cooler. He claimed that he called the Martins three times, but he never reached them. He was served with the lawsuit soon thereafter.

Parks testified that he visited the house three times since the lawsuit was filed. During those visits, he noticed that the steel piers he placed in the basement were gone, except one, and it had been moved. He claimed that moving the piers would cause movement of the walls above the basement, and he opined that the support piers from the basement had been removed or moved causing the problem of the house shifting. He stated that he could correct the problem with the house for $10–$12,000, or less. Parks stated on cross examination, "The rafters are on twenty-four-inch centers even though the contract says construction on sixteen-inch center because I always do twenty-four inch on the rafters."

Charles Martin testified on rebuttal that he had not removed any beams from the basement. He then stated that he replaced two of the four beams in the basement, but did not move the location of the piers.

The trial court found that the Martins proved their case and awarded judgment against D & D for $116,662.33 ($108,000 for repairs; $5,690.10 for six weeks storage; $1950 for six weeks rent; and $1,022.23 for carpeting). D & D filed a timely notice of appeal, and this appeal followed.

## I. *Motion to Dismiss*

D & D first contends that the trial court erred in not dismissing the Martins' complaint for failure to attach the contract as an exhibit pursuant to Arkansas Rule of Civil Procedure 10(d) (2008). Rule 10(d) provides that a copy of any written instrument upon which a claim is based shall be attached as an exhibit to the pleading in which such claim is averred unless good cause is shown for its absence in such pleading. D & D argues that the complaint did not include the contract as an attached exhibit nor did the Martins prof-

fer a good-cause explanation for not attaching the contract.

D & D claims that compliance with Rule 10(d) is mandatory under *Ray & Sons Masonry Contractors, Inc. v. U.S. Fidelity & Guaranty Co.*, 353 Ark. 201, 114 S.W.3d 189 (2003), where no good cause was alleged for noncompliance. D & D contends that the contract is at the heart of the lawsuit and that the Martins' failure to attach the contract as an exhibit or to plead good cause for not doing so should have led to the dismissal of the complaint.

The Martins claim that the trial court did not err in denying D & D's motion to dismiss. They point to the two-year delay between D & D filing its answer and the motion to dismiss, during which time the parties completed discovery, participated in mediation, and consulted ⌐6numerous expert witnesses. On the day of the hearing, D & D filed the motion about twenty minutes before the hearing began.

Further, the Martins contend that the motion was properly denied by the trial court in light of Arkansas Rule of Civil Procedure 6(c) (2010), which provides that all motions should be served twenty days prior to the scheduled hearing. Further, motions for judgment on the pleadings should be made within such time as to not delay the trial. Ark. R. Civ. P. 12(c) (2010).

▮ We construe court rules using the same canons of construction as are used to construe statutes. *Moon v. Citty*, 344 Ark. 500, 42 S.W.3d 459 (2001). The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction, and the analysis need go no further. *Id.* We review issues of statutory construction

de novo as it is for us to decide what a statute means. *Hodges v. Huckabee*, 338 Ark. 454, 995 S.W.2d 341 (1999). We are not bound by the decision of the trial court; however, in the absence of a showing that the trial court erred in its interpretation of the law, that interpretation will be accepted as correct on appeal. *Id.*

*Advocat, Inc. v. Heide*, 2010 Ark. App. 825, 378 S.W.3d 779, provides that a party may waive certain defenses by its conduct. There, the trial court denied a motion to compel arbitration where the arbitration agreement was not attached to the defendant's initial answer. *Id.* We held in the interlocutory appeal that Advocat validly raised the defense of arbitration ⌐7when it filed a motion to compel—and attached a copy of the arbitration agreement to the motion—three months after the filing of the lawsuit. *Id.* We further held that Heide had not been prejudiced by Advocat's actions. *Id.* In *Tri–State Insurance Co. v. B & L Products, Inc.*, 61 Ark.App. 78, 964 S.W.2d 402 (1998), we held that Rule 10(d) was not dispositive in all circumstances and that the failure to attach a document caused no prejudicial error.

Based upon our de novo review, we hold that the trial court did not err in denying D & D's motion to dismiss where D & D failed to act diligently, failed to timely file its motion, and waived its right by its own conduct to demand dismissal of the action based on Rule 10(d). Further, the trial court properly concluded that no prejudice resulted from the failure to attach the contract, as D & D authored the document.

## II. *Liability*

▮ D & D next contends that the trial court erred in finding D & D liable. D & D argues that the Martins' case relies primarily on the engineering report composed by Ben Strider, who was hired by D

& D to investigate whether the removal of support piers in the basement by the Martins was a contributing factor in the house's problems. D & D asserts that Strider failed to mention the support piers in his report; however, Strider did say in his testimony that he did not believe the piers' removal contributed to the problem. D & D points out that Strider admitted his friendship with the Martins' attorney and that he had testified for her in the past. Further, D & D asserts that Strider was the only witness who testified that the exterior walls were not plumb. Finally, D & D claims that Charles Martin's testimony changed regarding the piers. Thus, D & D contends that the trial court's judgment regarding liability should be reversed.

In a bench trial of a civil action, the standard of review is not whether there is substantial evidence to support the finding of the circuit court, but whether the judge's findings were clearly erroneous or clearly against the preponderance of the evidence. *Deltic Timber Corp. v. Newland*, 2012 Ark. App. 271, 412 S.W.3d 862. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that an error has been committed. *Id.* Facts in dispute and determinations of credibility are within the province of the finder of fact. *Id.*

We hold that the trial judge's determination of liability was not clearly erroneous. The evidence that D & D failed to properly construct the Martins' house included testimony from Ben Strider and admissions from David Parks of D & D. Ben Strider testified to the structural defects, noncompliance with the International Residential Code, and his opinion that the house was not structurally sound. He provided three potential solutions to repair

the kitchen/living room, and Charles Martin testified that the third option, lowering the ceiling, was not acceptable to him. Martin also testified that no beams were removed from the basement. David Parks admitted that the rafters were on twenty-four-inch centers even though the contract called for sixteen-inch centers. Thus, the trial court's finding of liability was not clearly erroneous.

III. *Damages*

Finally, D & D alternatively claims that the trial court erred in awarding damages to the Martins. D & D claims that the damages awarded are excessive in light of Duffy Chevallier's testimony that option three would cost $19,600, and Parks's testimony that he could fix the Martins' house for around $10–$12,000. Thus, D & D claims that the award of $108,000 for repairs rises to the level of economic waste and should shock the conscience of this court. D & D also asserts that the Martins should be responsible for mitigating their damages for storage by utilizing the basement to store their belongings.

However, we hold that the trial court did not err in its award of damages. In *Pearson v. Henrickson*, 336 Ark. 12, 983 S.W.2d 419 (1999), the Arkansas Supreme Court states as follows:

When an award of damages is alleged on appeal to be excessive, we review the proof and all reasonable inferences most favorably to the appellee and determine whether the verdict is so great as to shock our conscience or demonstrate passion or prejudice on the part of the jury.

*Id.* at 20–21, 983 S.W.2d at 424. The Martins introduced proof through Steve

Esposito of his estimates for completing the work required by both options one and two. Charles Martin testified that option three was not acceptable and what the costs related to relocation and rent would be. The trial court, as fact-finder, is in a superior position to determine the credibility of the witnesses. *Newland, supra.* Ac-cordingly, we affirm the trial court's ruling on damages as reasonable.

Affirmed.

ROBBINS and GRUBER, JJ., agree.